Gary R. WOLF, Appellant–Plaintiff,

v.

KAJIMA INTERNATIONAL INC., Subaru–Isuzu Automotive, Inc., Isuzu Motors America, Inc., d/b/a Isuzu Motors Limited, and Fuji Heavy Industries Ltd., Appellees–Defendants.

No. 86A05–9210–CV–357.

Court of Appeals of Indiana,
Fifth District.

Sept. 29, 1993.

David V. Scott, New Albany, Charles R. Vaughan, Vaughan and Vaughan, Lafayette, John A. Larson, Williamsport, for appellant-plaintiff.

Stephen R. Pennell, Brent W. Huber, Stuart & Branigin, Lafayette, James W. Hehner, Sipe Pankow Han Rumely & Hehner, Indianapolis, for appellees–defendants.

RUCKER, Judge.

When Gary R. Wolf sustained severe and permanent on-the-job injuries he filed a negligence action against Subaru–Isuzu Automotive, Inc. (Subaru), the owner of the work site, Kajima International, Inc. (Kajima), the general contractor of the work site, Fuji Heavy Industries, LTD. (Fuji), a corporate shareholder of Subaru, and Isuzu Motors America, Inc., d/b/a Isuzu Motors Limited. Subaru, Kajima and Fuji filed motions for summary judgment which the trial court granted. Wolf now appeals raising five issues for our review which we consolidate and rephrase as whether the trial court erred in entering summary judgment in favor of Subaru and Kajima.[1] Wolf does not challenge the entry of summary judgment in favor of Fuji. We reverse.

In 1987, Subaru accepted a bid from Kajima to serve as a general contractor for an automobile plant that Subaru was constructing in Lafayette, Indiana. Kajima, in turn, hired a number of subcontractors to work on the project including C.J. Rogers, Inc. As a part of the construction project for the plant, Subaru purchased worker's compensation insurance for itself, the general contractors, and the various subcontractors. The worker's compensation policy, issued by the Tokio Marine and Fire Insurance Company, was referred to as an owner controlled "wrap-up" or "wrap-around" insurance policy and contained a general policy of insurance with separate policy certificates issued to each contractor and subcontractor. Subaru paid the insurance premium on the policy. The total annual premium for the policy issued on behalf of C.J. Rogers equalled $78,878.00.

On August 11, 1989, Wolf was working at the Lafayette plant as an employee of C.J. Rogers, Inc. While so employed, Wolf was struck by a section of heavy steel that became dislodged from a crane. As a result, Wolf sustained severe and permanent injuries including the amputation of his left leg below the knee and a crushed right femur. Thereafter, Wolf filed a claim for worker's compensation and received benefits from Tokio Marine in the amount of $148,646.00. Wolf subsequently filed this civil action for negligence seeking damages for his injuries.

Subaru, Kajima and Fuji filed motions for summary judgment. After conducting a hearing, the trial court granted summary judgment in favor of Fuji on the grounds that it was merely a shareholder of Kajima and exercised no control over and had no involvement in the construction of the Lafayette plant. The trial court granted summary judgment in favor of Subaru and Kajima on the grounds that public policy demanded that Subaru and Kajima be treated as "statutory employers" because they provided workers compensation benefits to Wolf. Thus, according to the trial court, Subaru and Kajima should receive the benefit of that section of the Worker's Compensation Act which provides immunity to employers from civil actions filed by

---

1. In its decision the trial court held that because the contractor stood between the owner and the employee's immediate employer, the contractor is entitled to the same benefit as the owner. *Record* at 405. As neither party challenges this ruling, we will treat Subaru and Kajima as enjoying the same benefits for the purposes of this appeal.

injured employees. Isuzu Motors America, Inc., d/b/a Isuzu Motors Limited did not file a motion for summary judgment and they are not parties to this appeal.[2]

■ In entering its order of summary judgment the trial court set forth detailed findings and conclusions. Specific findings entered by the trial court when ruling on motions for summary judgment afford the appellant an opportunity to address the merits of the trial court's rationale. *Fort Wayne Patrolman's Benev. Ass'n, Inc. v. City of Fort Wayne* (1980), Ind.App., 408 N.E.2d 1295, 1300–01, *reh. denied.* The specific findings and conclusions also aid our review by providing us with a statement of reasons for the trial court's actions. However, they have no other effect. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, 1106, *trans. denied.* Rather than relying upon the trial court's findings and conclusions, we must base our decision upon the Rule 56(C) materials properly presented to the trial court. Our standard of review is the same as it was for the trial court: whether there was any genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *City of Columbus Bd. of Zoning Appeals v. Big Blue* (1992), Ind. App., 605 N.E.2d 188. Where the facts are not in dispute, the propriety of summary judgment becomes solely a question of law. *O'Neal v. Throop* (1992), Ind.App., 596 N.E.2d 984, *trans. denied.*

The Indiana Worker's Compensation Act (Act) provides immunity for negligent acts committed by "employers" and "persons in the same employ" as the injured party. *See* Ind.Code § 22-3-2-6. At the time of his injury Wolf was employed by C.J. Rogers, Inc., a subcontractor. Thus, according to Wolf only C.J. Rogers is entitled to the immunity afforded by the Act.

Subaru counters that because Wolf collected worker's compensation benefits under the Tokio Marine "wrap-up" or "wraparound" insurance policy, he surrendered his option to collect compensation from Su-

baru under a separate tort action. Subaru advances two interrelated theories in support of its position, namely: (1) Wolf has elected his remedy and (2) Subaru is a statutory employer.

In *Lackey v. DuHadway Co.,* (1990), Ind. App., 560 N.E.2d 671, *trans. denied,* Kirt Lackey worked for his father, Owen Lackey, who was a subcontractor for Wainwright Construction Company (Wainwright). Wainwright, in turn was a subcontractor of the DuHadway Company (DuHadway). DuHadway did not obtain a certificate of insurance from its subcontractors showing that they had complied with the provisions of the Worker's Compensation Act by securing worker's compensation insurance. After Lackey sustained an on-the-job injury, DuHadway agreed to pay Lackey damages and signed a standard form agreement which the Worker's Compensation Board approved. After collecting the compensation, Lackey filed a negligence action against both DuHadway and Wainwright. On appeal, the Third District of this court observed that Kirt Lackey had the option of suing for tort damages or filing for worker's compensation payments or seeking both remedies at the same time. *See* Ind.Code § 22–3–2–13. The court indicated however that Lackey could collect only one of the remedies. Because Lackey had collected the worker's compensation remedy, the court held, "[w]hen Kirt Lackey collected the worker's compensation remedy, he surrendered his option to seek and collect a tort remedy against all the parties liable for his worker's compensation." *Lackey,* 560 N.E.2d at 673. According to Subaru, the "election of remedies" reasoning used in *Lackey* is equally applicable here and likewise the result should be the same. We disagree for two reasons.

■ First, the facts in this case are readily distinguishable. *Lackey* involved an immediate employer/subcontractor who did not have worker's compensation insurance. Because the general contractor

---

**2.** In its brief Subaru noted that Isuzu Motors was dismissed from this case on plaintiff's mo-

tion during the pendency of this appeal.

failed to extract a certificate from the subcontractor showing compliance with the Act, it was liable to provide worker's compensation benefits and to pay those benefits. Ind.Code § 22–3–2–14(b). That is not the case here for reasons we discuss later in this opinion. Second, under Indiana's prior worker's compensation statutory scheme an injured employee, after pursuing a worker's compensation remedy along with a tort remedy, was explicitly prevented from collecting under both.[3] *See Artificial Ice & Cold Storage Co. v. Ryan* (1935), 99 Ind.App. 606, 193 N.E. 710; *Artificial Ice & Cold Storage Co. v. Waltz* (1925), 86 Ind.App. 534, 146 N.E. 826, *trans. denied; In re Waltz* (1923), 79 Ind.App. 298, 138 N.E. 94 (collectively referred to as the "Artificial Ice Trilogy"). The election of remedies provision under the prior statute was clearly designed to prohibit an injured employee from collecting double recovery for the same injury.

Under our present statutory scheme the strong policy of prohibiting double recovery remains intact. However, as noted in *Lewis v. Lockard* (1986), Ind. App., 498 N.E.2d 1024, 1026, *trans. denied,* the specific provision in the prior version of Ind.Code §§ 22–3–2–13 and 14 denying the collection for both worker's compensation and tort damages has been replaced by a statutory scheme which also prevents double recovery, but through elaborate subrogation provisions. *Lewis* at 1026 citing Ind.Code §§ 22–3–2–13 and 14. Nothing in the current statute limits an injured employee to an election of remedies. Rather, where the injured employee receives compensation from his or her employer or employer's compensation carrier, then the employer or the employer's compensation carrier "shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from [a] third party." I.C. § 22–3–2–13.

Subaru next contends that in addition to the election of remedies language in *Lackey,* that *Lackey* controls here because it also stands for the proposition that a work site owner or general contractor who secures worker's compensation on behalf of a subcontractor/employer, is in effect made the employer for the purposes of the Act and thus is entitled to immunity as a "statutory employer." In support of its position Subaru cites *Washington Metro. Area Transit Auth. v. Johnson* (1984), 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768. In that case the general contractor, Washington Metropolitan Area Transit Authority (WMATA), purchased a comprehensive "wrap-up" worker's compensation insurance policy on behalf of all the subcontractors. The policy covered all workers employed at the job site. Employees of several subcontractors who had not secured their own workers' compensation insurance filed tort actions in various courts against WMATA for work related injuries. The trial courts dismissed the actions holding that WMATA had earned immunity under the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA") by purchasing worker's compensation coverage for employees of the subcontractors. The District of Columbia Court of Appeals reversed and the cases were appealed to the Supreme Court. The Supreme Court reversed the court of appeals and held (1) a general contractor qualifies for statutory employer immunity under the LHWCA, and (2) a general contractor is entitled to immunity from tort actions where it purchases comprehensive "wrap-up" worker's compensation policy on behalf of its subcontractors.

The difference in language between the LHWCA and Indiana's Worker's Compen-

---

**3.** The Workmen's Compensation Act stated in relevant part:

Whenever an injury or death, for which compensation is payable under this act (workmen's compensation), shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages ... the injured employee ... may claim compensation from the employer or proceed at law against such other person to recover damages or may proceed against the employer for compensation and against such other person to recover damages at the same time, *but he ... shall not collect from both.*

Indiana Code Ann. § 9458 (Burns 1926), 1919 Ind.Acts 57, § 13 (emphasis added).

sation Statute provides an important and critical distinction between *Johnson* and the case before us. The LHWCA specifically provides that a general contractor "shall be liable for and shall secure the payment of [workers'] compensation to employees of the subcontractor unless the subcontractor has secured such payment." 33 U.S.C. § 904(a). The effect of this provision is to require general contractors to obtain worker's compensation coverage for the employees of subcontractors that have not secured their own insurance. The court noted that the "most natural reading" of the LHWCA is to grant a general contractor immunity from tort suits so long as it does not fail to meet its statutory obligation to secure insurance. *Johnson* 467 U.S. at 938, 104 S.Ct. at 2834.

■ In contrast, the general contractor does not have a statutory duty to secure worker's compensation under the Act. Rather, a general contractor has a statutory duty to require that each subcontractor obtain a certificate from the Worker's Compensation Board showing that the subcontractor is either carrying worker's compensation insurance or has the financial ability to pay compensation to an injured employee. Ind.Code § 22–3–2–14(b). In essence the Act imposes upon the worker's immediate employer the onus of securing worker's compensation insurance and imposes on the general contractor the duty of ensuring that the subcontractor has complied with the law. Where the general contractor fails to exact the required certificate then it becomes secondarily liable for the payment of compensation on account of a subcontractor's employee suffering an on-the-job injury or death. *Id.*

Subaru contends that because it did not exact a certificate of compliance from any of its subcontractors, it is now just as liable to Wolf as C.J. Rogers would have been. Thus, Subaru concludes it should be afforded the same statutory immunity. We cannot accept Subaru's argument. The secondary liability imposed by statute evidences an intent by the Legislature to encourage general contractors to insist that subcontractors obtain the insurance re-

quired by law. Here Subaru did not insist that C.J. Rogers obtain worker's compensation insurance, rather Subaru voluntarily purchased the insurance on behalf of C.J. Rogers and all other subcontractors and sub subcontractors.

■ We hold that an owner or general contractor may not alter its status concerning potential tort liability to employees of contractors or subcontractors by directly purchasing worker's compensation insurance on behalf of subcontractors. To hold otherwise would allow an owner or general contractor to voluntarily take out insurance that the law does not require and thereby secure for itself freedom from liability from negligence. We do not believe the Legislature intended such a result.

■ The long-standing rule in this jurisdiction is that the Act should be liberally construed to effectuate its humane purpose, and that doubts in the application of the terms are to be resolved in favor of the employee. *Stump v. Commercial Union* (1992), Ind., 601 N.E.2d 327, 331–32. The exclusive remedy provision does not apply to prohibit an employee from asserting third-party claims against persons other than the employer. *Id.* In this case it is undisputed that Subaru was not Wolf's employer. Nor, for reasons herein discussed, was Subaru a "statutory employer." When Wolf pursued his worker's compensation remedy and received payment thereunder he did not surrender his option to seek and collect a tort remedy against either Subaru or Kajima. We preserve to the employee the right to recover in tort from third persons subject to the subrogation rights of the employer or employer's insurance carrier for any worker's compensation benefits paid to the employee. Thus, the trial court's entry of summary judgment was inappropriate and must be reversed.

Judgment reversed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.