SHEPARD, Chief Justice.
 

 We have agreed to answer two questions about the viability of tort claims against employers, certified to us by the United States District Court for the Southern District of Indiana pursuant to Ind. Appellate Rule 15(0). Those questions are:
 

 I) Whether there is an intentional tort exception to the exclusivity provision of the Indiana Worker’s Compensation Act, Ind.Code § 22-3-2-6, and
 

 II) Whether there is an intentional tort exception to the exclusivity provision of the Occupational Diseases Act, Ind. Code § 22-3-7-6.
 

 As to the first question, we hold that there is no exception to the compensation act, but conclude that the act by its terms does hot bar certain intentional tort actions. We answer the second question in the negative; the Occupational Diseases Act bars intentional tort actions.
 

 The Indiana General Assembly has established worker’s compensation as an exclusive remedy for employment-related personal injury or death which occurs “by accident.” It has not, however, placed such a limitation on the scope of the Occupational Diseases Act. Because injuries intentionally inflicted by an employer are not “by accident,” suits arising therefrom are not barred by the compensation act. Conversely, intentionally injured employees who otherwise satisfy the requirements of the Occupational Diseases Act have their exclusive remedy therein. That act contains no “by accident” requirement, and it is beyond the province of the courts to create one.
 

 I. Worker’s Compensation Act
 

 The exclusivity section of the Indiana Worker’s Compensation Act provides that the rights and remedies granted to an employee by the act
 

 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death....
 

 Ind.Code Ann. § 22-3-2-6 (West Supp. 1992).
 
 [1]
 

 A
 
 Exclusion of Intentional Torts
 

 In
 
 Evans v. Yankeetown Dock
 
 (1986), Ind., 491 N.E.2d 969, we considered the phrase “by accident” which appears in this section and concluded that it contemplates an injury not intended or expected by the sufferer.
 
 Id.
 
 at 974-75. This holding represented a significant milestone on the mazy path of the jurisprudence surrounding this short but important phrase.
 

 The definition of “by accident” approved in
 
 Evans
 
 was originated by the British courts,
 
 see Fenton v. Thorley & Co.,
 
 19 T.L.R. 684 (1903), and adopted in Indiana early on, first by the Court of Appeals,
 
 Indian Creek Coal & Mining v. Calvert
 
 (1918), 68 Ind.App. 474, 119 N.E. 519, and later by this Court,
 
 Heflin v. Red Front Cash & Carry Stores
 
 (1947), 225 Ind. 517, 75 N.E.2d 662. Under the
 
 Indian Creek/Heflin
 
 approach, the “by accident” limitation is viewed as a mens rea requirement, not an element of causation as contrary views had held.
 
 See Indian Creek,
 
 68 Ind.App. at 506-07, 119 N.E. 519 (Daus-man, J., dissenting). Our courts consistently applied this definition for some forty years.
 
 Chestnut v. Coca Cola Bottling
 
 (1969), 145 Ind.App. 504, 251 N.E.2d 575.
 

 Then, in
 
 United States Steel v. Dykes
 
 (1958), 238 Ind. 599, 154 N.E.2d 111, we reversed a compensation award on the ground that an injury had to be
 
 caused
 
 by an “unusual exertion” to be “by accident.”
 
 Id.
 
 at 610, 154 N.E.2d at 117. This “unfortunate
 
 *1269
 
 language,”
 
 Lock-Joint Tube Co. v. Brown
 
 (1963), 135 Ind.App. 386, 394, 191 N.E.2d 110, 114, signaled a re-opening of the issues resolved in
 
 Indian Creek
 
 and ultimately generated widespread confusion.
 
 See generally
 
 Ben F. Small,
 
 Workmen’s Compensation in Indiana
 
 § 5.1, at 42 (Supp.1976); Tony H. Abbott,
 
 Survey of Recent Developments in Indiana Law, Workmen’s Compensation,
 
 9 Ind. L.Rev. 389 (1975); F. Joseph Jaskowiak,
 
 The Meaning of the Term “Accident” in the Indiana Workmen’s Compensation Act,
 
 13 Val.U.L.Rev. 535, 541 (1979). After a cryptic encounter with this problem in
 
 Calhoun v. Hillenbrand Industries
 
 (1978), 269 Ind. 507, 381 N.E.2d 1242, in
 
 Evans
 
 we once again embraced the
 
 Indian Creek/Heflin
 
 definition and thereby restored the status quo ante
 
 Dykes.
 

 The
 
 Evans
 
 Court used the intentions of the employee-victim as a vehicle for disposing of the
 
 Dykes
 
 causation approach. This focus on the sufferer has, however, apparently obscured another traditional component of the “by accident” requirement: the
 
 employer’s
 
 intentions. In the post
 
 Evans
 
 ease
 
 National Can Corp. v. Jovanovich
 
 (1987), Ind. App., 503 N.E.2d 1224, for example, the Court of Appeals resolved a claim that employers’ intentional torts are outside the act without reference to the “by accident” requirement. Rather, it crafted an “intentional tort”
 
 exception
 
 to the exclusivity provision. Under that exception, the Third District said, “if an employer intentionally injures an employee, the Act does not apply.”
 
 Id.
 
 at 1232. Several other panels have since joined this view.
 
 [2]
 

 Today, following from our work in
 
 Evans,
 
 we reject the “intentional tort exception” outlined in
 
 National Can
 
 and reiterate the view that “exceptions should not ordinarily be declared by the courts when the legislature speaks broadly.”
 
 Evans,
 
 491 N.E.2d at 972 (quoting
 
 Kunkalman v. Gibson
 
 (1908), 171 Ind. 503, 509-10, 84 N.E. 985, 987). Instead, we hold that the act itself does not include employers’ intentional torts within its coverage. The exclusivity provision is expressly limited to personal injury or death arising out of and in the course of employment which occurs “by accident.” Because we believe an injury occurs “by accident” only when it is intended by neither the employee nor the employer, the intentional torts of an employer are necessarily beyond the pale of the act.
 

 This approach is consistent with the legislative objectives which shape our workers compensation scheme. Historically, workers compensation was concerned not with intentional torts but with the intolerable results that flowed from the common law’s treatment of workers’ negligence actions.
 
 See
 
 Note,
 
 Right of Employee to Sue Employer for an Intentional Tort,
 
 26 Ind. L.J. 280, 280 (1951). During the nineteenth century, common law judges clung to personal fault as the sine qua non of employer liability despite the increasingly massive and impersonal nature of the workplace.
 
 Balzer v. Waring
 
 (1911), 176 Ind. 585, 95 N.E. 257. If the employer was not “at fault,” it was inconceivable to judges in the last century that it should be compelled to contribute towards the support of the worker or his family. Samuel B. Horo-vitz,
 
 Modem Trends in Workmen’s Compensation,
 
 21 Ind.L.J. 473, 474 (1946).
 

 The battery of defenses which the courts used prior to the compensation act to enforce the fault requirement was especially devastating to workers.
 
 [3]
 
 The defenses of assump
 
 *1270
 
 tion of risk, fellow servant and contributory-negligence, dubbed the unholy trinity by Dean Prosser, prevented recovery by some eighty percent of those workers who litigated their injury claims. Horovitz,
 
 supra,
 
 at 475. These defenses were of no avail in an intentional tort action, however, and employees stood a chance of recovering in such suits.
 
 See Thayer v. St. Louis, A. & T.H. R.R.
 
 (1864), 22 Ind. 26;
 
 McGill v. Duckworth,
 
 944 F.2d 344 (7th Cir.1991) (interpreting Indiana law),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 1265, 117 L.Ed.2d 493;
 
 see also
 
 Thomas F. Macke,
 
 Judicial Misapplication of the Indiana Workmen’s Compensation Act to Injuries Resulting from an Employer’s Wilful Conduct,
 
 13 Val.U.L.Rev. 561 (1979). We think it improbable that the legislature intended to foreclose common law actions in those few cases in which employees historically were able to prevail.
 

 Nor do we see that the exclusion of intentional torts undermines the viability of the workers compensation system. Workers compensation obviates the uncertainty, delay, and expense of common law remedies by substituting a fixed compensation according to reimbursement schedules.
 
 Frampton,
 
 260 Ind. at 250, 297 N.E.2d at 427. The act envisions that the costs of no-fault liability will be borne by industry,
 
 Aetna Casualty & Sur. v. Hightower
 
 (1939), 107 Ind.App. 46, 22 N.E.2d 875, and passed on to the ultimate consumers of products.
 
 See In re Duncan
 
 (1920), 73 Ind.App. 270, 127 N.E. 289. This approach can function efficiently only so long as liability is predictable enough that it can be factored accurately into the cost of production.
 

 Courts have traditionally understood this predictability feature as requiring that employee injuries be compensated under the act whenever possible.
 
 See
 
 Macke,
 
 supra,
 
 at 562-63. Broad inclusion within the system has generally been achieved through “liberal construction” of the act’s threshold jurisdictional requirements.
 
 E.g., Kariger Motors v. Kariger
 
 (1961), 132 Ind.App. 85, 173 N.E.2d 916;
 
 see generally Evans,
 
 491 N.E.2d at 973. Nonetheless, employers’ intentional torts may be excluded from the act without upsetting the lodestar principle of regular and predictable liability. An employer can avoid liability for intentional torts by refraining from egregious behavior — a decision over which it has complete control.
 

 Legislative exclusion of intentional torts also complements other public policies of this state. For example, Indiana generally denies the ability to insure against or waive liability for intentional torts.
 
 See LaFrenz v. Lake County Fair Bd.
 
 (1977), 172 Ind.App. 389, 360 N.E.2d 605. Inclusion of intentional torts within the act’s coverage would allow just that, and it would also insulate employers from the deterrence which comes from exposure to regular civil damages.
 
 See Skinner v. Martin
 
 (1983), Ind.App., 455 N.E.2d 1168. Finally, we observe that exclusion is consistent with the understandings which prevailed when our compensation act was adopted.
 
 See Blake v. Head,
 
 106 L.T.R. 822 (1912) (no recovery under act where assault was by employer himself instead of fellow employee or third party).
 

 For these reasons we conclude that employers’ intentional torts are not included within the act’s coverage and hold that an injury occurs “by accident” only when neither the sufferer
 
 [4]
 
 nor the employer intends it to result.
 

 B. Showing Intention
 

 The demonstration necessary to establish that an employer intended to injure an employee is also relevant to our analysis of the act’s scope. Properly conceived, this issue raises two distinct questions. First, what state of mind or level of intent is necessary to constitute “intent” to harm? Second, who must have intentionally caused the injury for the employer to be liable in tort?
 
 See National Can,
 
 503 N.E.2d at 1232-33;
 
 see generally
 
 Joseph H. King, Jr.,
 
 The Exclusiveness of an Employee’s Worker’s Compensa
 
 
 *1271
 

 tion Remedy Against His Employer,
 
 55 Tenn.L.Rev. 405 (1988).
 

 Level of Intent.
 
 In crafting its intentional tort exception, the
 
 National Can
 
 court selected a high standard of culpability “to avoid the workmen’s compensation scheme being ‘swallowed up’ by a glut of common law suits outside the Act.”
 
 Id.
 
 at 1233 n. 14. We agree that “mere” employer negligence or recklessness is not sufficient to strip the Worker’s Compensation Board of jurisdiction and instead vest jurisdiction in a court of law. The employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but it is not an intentional wrong.
 
 Blade v. Anaconda Aluminum Co.
 
 (1983), Ind.App., 452 N.E.2d 1036. Thus, while we reject the Court of Appeal’s judicially crafted exception, we agree that nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice.
 
 [5]
 

 Who Must Intend?
 
 We also agree with the
 
 National Can
 
 court that the employer itself must have intended the injury. 503 N.E.2d at 1233. As that court said, the logic that supports holding an employer hable for directing or expressly authorizing torts against its employees does not compel the same result when the intentional tort is committed by a foreman or supervisor and not by the employer itself. The Court explained that “[although the foreman may be personally at fault, it does not follow that his moral culpability can be shifted to the employer by simple reliance on the doctrine of
 
 respondeat superior.” Id.
 
 at 1233 n. 13. Moreover, imputing intent in that manner would expose the employer to uncertain liability for acts over which it has only tenuous control and, in doing so, would compromise the predictability so central to the act. Accordingly, it must be the employer who harbors the intent and not merely a supervisor, manager or foreman.
 
 [6]
 

 With these understandings, we answer the first certified question by saying that certain intentional tort actions are not barred by the act.
 

 II. The Occupational Diseases Act
 

 The Occupational Diseases Act was enacted more than twenty years after introduction of the workers compensation scheme. By authorizing compensation for certain diseases not caused by an employer’s negligence, the ODA created new rights and remedies previously unrecognized by our common law.
 
 Illinois Steel Co. v. Fuller
 
 (1939), 216 Ind. 180, 23 N.E.2d 259. The object of this act is the protection of workers who come within its provisions, and it should be liberally construed to effectuate this humane purpose.
 
 Harbison-Walker Refractories Co. v. Turks
 
 (1942), 110 Ind.App. 563, 39 N.E.2d 791. Nonetheless, its scope is fixed by provisions which were the product of careful legislative compromise, and these cannot be enlarged by judicial pronouncement.
 
 See
 
 
 *1272
 

 McGill Mfg. Co. v. Dodd
 
 (1945), 116 Ind.App. 66, 59 N.E.2d 899.
 

 Like the Worker’s Compensation Act, the ODA includes an exclusivity provision, which reads:
 

 The rights and remedies granted under this chapter to an employee subject to this chapter on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.
 

 Ind.Code Ann. § 22-3-7-6 (West 1991).
 

 This language essentially tracks that of the Worker’s Compensation Act, with the obvious exception that the “by accident” requirement has been omitted and “by occupational disease” substituted in its place. We have concluded that the “by accident” language in the compensation act embodies the legislature’s decision that intentionally inflicted personal injuries may be remedied through common law litigation. The absence of this language from the ODA, coupled with the nature of the injuries recognized therein,
 
 [7]
 
 suggest that the legislature viewed the occupational diseases scheme as the only forum in which those injuries, intentionally inflicted or not, might be compensated.
 

 In reaching this conclusion, we have considered the possibility that the phrase “by occupational disease” contains a non-intentionality requirement, a possibility which might complement the remedial purposes of the ODA and harmonize it with various components of the worker protection scheme.
 
 [8]
 
 The legislature has assisted us in assessing this possibility by defining “occupational disease” within the act. Indiana Code § 22-3-7-10 reads:
 

 (a) As used in this chapter, “occupational disease” means a disease arising out of and in the course of the employment.
 

 (b) A disease arises out of the employment only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection be-' tween the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequent.
 

 Ind.Code Ann. § 22-3-7-10 (West 1991). We think this definition makes plain that the phrase “by occupational disease” relates to the causal connection between employment and injury and not to state of mind as does the “by accident” requirement.
 

 Subsection (a) defines an “occupational disease” as one which “aris[es] out of and in the course of employment.” It is somewhat curious that the drafters of the ODA chose to define “occupational disease” in these terms given that this language also appears in the exclusivity provision itself. This language clearly addresses the issue of causation,
 
 Evans,
 
 491 N.E.2d at 975, and we think the legislature repeated it in two components of the ODA exclusivity section to dramatize the centrality of the causation element where disease and not personal injury is at issue.
 
 *1273
 
 Similarly, subsection (b) of the definition merely elaborates on subsection (a) and also cannot be said to embody an intent requirement even though its proviso that occupational diseases must “follow as a natural incident of the work” might to some be thought elastic enough for the task.
 

 This point is well made in
 
 Schwitzer-Cummins Co. v. Hacker
 
 (1953), 123 Ind.App. 674, 112 N.E.2d 221, where the court explained that an occupational disease is one caused by the particular conditions of an employee’s work.
 
 Id.
 
 at 687, 112 N.E.2d at 225. The
 
 Schwitzer
 
 Court cited approvingly
 
 McGill Mfg. Co. v. Dodd
 
 (1945), 116 Ind.App. 66, 59 N.E.2d 899, for the proposition that “an occu-' pational disease arises out of the employment where there is a direct connection between its cause
 
 and the conditions under which the work is performed,
 
 which reasonably may be determined to have followed as a
 
 normal
 
 result of the exposure occasioned by the work.”
 
 Id.
 
 123 Ind.App. at 689, 112 N.E.2d at 226 (emphasis added in
 
 Schwitzer).
 
 Notable in this explanation is the fact that it is the result of the exposure (namely, the disease) and not the exposure itself which must be “normal” or “natural.” The statute requires, then, that the disease follow naturally from the given exposure. It does not require that the exposure follow naturally from the particular work environment.
 

 From this we conclude that the section’s “by occupational disease” language is designed to reinforce and explain the requirement that there be a causal connection between any disablement or death suffered and the employment, a requirement which is also embodied in the exclusivity section’s “arising out of and in the course of employment” component. This causation requirement exists independent of the circumstances by which any given pathogen came to be present in the workplace, including the fact that it was intentionally introduced. Thus, where an employee’s disease
 
 was in fact
 
 caused by exposure to the hazards actually posed by a given employment situation, this requirement has been satisfied.
 
 Id.
 
 at 687, 112 N.E.2d at 225;
 
 see also House v. D.P.D., Inc.
 
 (1988), Ind.App., 519 N.E.2d 1274. This is so even where the employer knows to a certainty that disease will eventually result from a hazard, at least so long as that hazard is incidental to the character of the business and not outside the employer-employee relationship.
 
 Cf.
 
 Ind. Code Ann. § 22-3-7-10(b) (West 1991).
 

 The plaintiffs in the action before the District Court assert in their brief to us that “there is no logical rationale which would warrant a preemption of the cause of action for an intentional tort which results in a disease, while preserving the same cause of action in cases of injury.” This is an argument for amending the statute. The legislature might have considered a specialized administrative body better able to resolve questions of liability for occupational disease, whether intentionally caused or not, given the “slow, creeping, insidious” nature of the injury at issue. Moreover, the sheer improbability that a corporate employer would adopt policies through its regular decision-making channels which were intentionally calculated to disease its employees may explain the failure to provide for such an eventuality.
 

 The Occupational Diseases Act does not make any exception for diseases intentionally occasioned, and it was within the authority of the legislature to formulate such a scheme. Accordingly, we answer the second certified question in the negative.
 

 DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.
 

 [1]
 

 . This section has been amended since this suit commenced in federal court.
 
 See
 
 1993 Ind.Acts 3089, Pub.L. No. 47-1993. Reference here is to the version as it then existed, the complete text of which can be found at 1992 Ind.Acts 1148, Pub.L. No. 2-1992, § 740. The changes made since 1992 do not alter the statute’s substance.
 

 [2]
 

 .
 
 See Gordon v. Chrysler Motor Corp.
 
 (1992), Ind. App. 2d Dist., 585 N.E.2d 1362;
 
 Cox v. American Aggregates Corp.
 
 (1991), Ind.App. 1st Dist., 580 N.E.2d 679.
 

 Later, when this question was put to the Seventh Circuit, it predicted that this Court would likely repudiate the
 
 National Can
 
 doctrine.
 
 Buford v. American Tel. & Tel. Co.,
 
 881 F.2d 432 (7th Cir.1989). The
 
 Buford
 
 opinion effectively precluded federal district courts sitting in diversity from entertaining the intentional tort exception,
 
 see, e.g., Tacket v. General Motors,
 
 818 F.Supp. 1243, 1249 (S.D.Ind.1993), thereby setting up a conflict with our intermediate appellate court.
 

 [3]
 

 .
 
 Frampton v. Central Ind. Gas
 
 (1973), 260 Ind. 249, 297 N.E.2d 425. Under Indiana law, an employee injured in the workplace could not recover if the employee had made a mistake or otherwise was in part to blame,
 
 e.g., Indianapolis & C.R.R. v. Love
 
 (1858), 10 Ind. 554 (contributory negligence), if, by undertaking the work, the employee could be said to have assumed the risk,
 
 e.g., Brazil Block Coal Co. v. Hoodlet
 
 (1891), 129 Ind. 327, 27 N.E. 741 (assumption of risk), or if a
 
 *1270
 
 co-worker, and not the employer personally, caused the accident, e.g.,
 
 Slattery's Admin, v. Toledo and Wabash Ry.
 
 (1864), 23 Ind. 81 (fellow servant).
 

 [4]
 

 .
 
 See also
 
 Ind.Code Ann. § 22-3-2-8 (West 1991) (no compensation allowed for knowingly self-inflicted injury or death).
 

 [5]
 

 . We also decline to adopt the rule pioneered in Michigan that an employer may be sued in tort if it "knew that the injury was substantially certain to occur.”
 
 Beauchamp v. Dow Chem.,
 
 427 Mich. 1, 398 N.W.2d 882, 891 (1986).
 
 See generally
 
 Larson,
 
 supra,
 
 at 13-96. In fact, even Michigan apparently no longer follows this approach.
 
 See McNees v. Cedar Springs Stamping Co.,
 
 184 Mich. App. 101, 457 N.W.2d 68 (1990).
 

 [6]
 

 . This holding is consistent with the rule, long applied in Indiana, that an injury which stems from the intentional act of a co-worker is an injury "by accident.”
 
 See Furst Kerber Cut Stone Co. v. Mayo
 
 (1924), 144 N.E. 857. When determining if an injury was “by accident,” the dis-positive inquiry is whether, as between the employer and sufferer, the injury was intended. As to this issue, the intentions of co-workers, supervisors or other third parties are of no moment. Thus, if an employee is injured by the intentional tort of a co-worker and that tort was not also intended by the employer (or the sufferer), and if the injury arose in and out of the course of the sufferer’s employment, then it is compensable.
 

 Moreover, if the tortfeasor co-worker was not acting in the course of his employment at the time he inflicted the injuries, then he is not considered to be "in the same employ" as the sufferer.
 
 Martin v. Powell
 
 (1985), Ind.App., 477 N.E.2d 943. In such case, the sufferer may not only collect workers compensation but may also bring suit against the tortfeasor co-worker pursuant to the claim and subrogation provisions of Ind.Code Ann. § 22-3-2-13 (West 1991).
 
 Lutz v. DeMars
 
 (1990), Ind.App., 559 N.E.2d 1194;
 
 see generally Fields v. Cummins Emp. Fed. Credit Union
 
 (1989), Ind.App., 540 N.E.2d 631.
 

 [7]
 

 .
 
 See Schwitzer-Cummins Co. v. Hacker
 
 (1953), 123 Ind.App. 674, 684, 112 N.E.2d 221, 224 (observing that ODA's passage reflects legislature’s realization that "the slow, creeping, insidious progress of disease often may be more devastating, crippling and lethal to a workman than the disablement resulting from accidental physical injury” but that such disease could rarely be recovered for in negligence or otherwise).
 

 [8]
 

 .
 
 See In re Jefferies
 
 (1938), 105 Ind.App. 349, 351, 14 N.E.2d 751, 752 (rules controlling administration and construction of Worker’s Compensation Act "are applicable to the Workmen's Occupational Diseases Act”);
 
 accord Vickery v. Westinghouse-Haztech, Inc.,
 
 956 F.2d 161 (7th Cir.1992) (interpreting Illinois law).