**Mary Jane McQUADE, Appellant–Plaintiff,**

v.

**DRAW TITE, INC., Appellee–Defendant.**

No. 44A05–9402–CV–00044.

Court of Appeals of Indiana, Fifth District.

Aug. 9, 1994.

Rehearing Denied Sept. 28, 1994.

Patrick F. O'Leary, Goshen, for appellant.

Douglas A. Hoffman, Fort Wayne, for appellee.

SHARPNACK, Chief Judge.

Mary Jane McQuade appeals the summary judgment granted in favor of Draw Tite, Inc. in McQuade's negligence action against Draw Tite. For the reasons set forth below, we reverse the trial court's entry of summary judgment and remand this cause to the trial court with instructions to dismiss for lack of subject matter jurisdiction.

McQuade presents one issue for our review, which we restate as whether the trial court erred in finding that McQuade's claim against Draw Tite was barred by the exclu-

sivity provision of the Indiana Worker's Compensation Act (the "Act").

■ The facts are not in dispute. McQuade was employed by Mongo Electronics, a subsidiary of Draw Tite. On April 27, 1993, McQuade was injured in a work-related accident. On April 28, 1993, McQuade filed a claim for compensation pursuant to the Act. McQuade's claim was honored, although not yet resolved, at the time McQuade's complaint was filed in this action. Draw Tite filed its motion for summary judgment on June 30, 1993. The motion was granted by the trial court on November 17, 1993. The trial court found that McQuade's claim was barred by the exclusivity provision of the Act because Draw Tite, as the parent corporation of Mongo, had sufficient interconnectedness with Mongo for the two corporations to be treated as one for the purposes of exclusivity.[1] The Indiana Supreme Court recently has held, however, that the use of a summary judgment motion in this context is incorrect. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282 (Ind.1994). The defense that a claim is barred by the exclusivity provision of the Act is an attack on the court's subject matter jurisdiction, which cannot form the basis of a motion for summary judgment. *Id.*

"Instead, when not pled in the answer, the appropriate vehicle for such a challenge is a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). This requirement flows from several important distinctions between the two motions.

Summary judgment terminates litigation predicated upon a finding that there are no material issues of fact that necessitate trial. In reviewing a motion for summary judgment, the judge may not weigh the evidence. *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785.

By contrast, a motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. When a court lacks subject matter jurisdiction, any action it takes is void. *In re Chapman* (1984), Ind.App., 466 N.E.2d 777. A dismissal under Trial Rule 12(B)(1) is not an adjudication on the merits nor is it res judicata. *Harp v. Dep't of Highways* (1992), Ind.App., 585 N.E.2d 652. A plaintiff thus is free to refile the action in the same tribunal or another tribunal that has jurisdiction. *See Mid–States Aircraft Engines* [*v. Mize Co. Inc.* (1984), Ind.], 467 N.E.2d [1242] at 1246–47. Lack of subject matter is an affirmative defense which may be raised in the pleadings, *see* T.R. 8(C), or on motion under 12(B)(1).

Whether the Worker's Compensation Board and not the trial court had jurisdiction is a question on which the opponent of jurisdiction would typically carry the burden of proof. *See Methodist Hosp. v. Ray* (1990), Ind.App., 551 N.E.2d 463. There is a strong public policy favoring the coverage of employees under the act. Thus, when the plaintiff's own complaint recites facts demonstrating the employment relationship and its role in the injuries alleged, the burden shifts to the plaintiff to demonstrate some grounds for taking the claim outside the Worker's Compensation Act."

*Perry,* 637 N.E.2d at 1286. Thus, we must analyze the present case as a question of jurisdiction on which the plaintiff carries the burden of proof and would, typically, have been required to present evidence. *Id.; see also Foshee v. Shoney's Inc.* (1994), Ind., 637 N.E.2d 1277 and *Baker v. Westinghouse,* (1994), Ind., 637 N.E.2d 1271.

Worker's Compensation is governed by Article 3 of Title 22 of the Indiana Code. Under Ind.Code § 22–3–2–6,

"[t]he rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident *shall exclude all other rights and remedies* of such employee, his

---

1. When summary judgment is granted, findings of fact are inappropriate because there are no issues of fact. *Laudig v. Marion County Board of Voters Registration* (1992), Ind.App., 585 N.E.2d 700, 702 n. 1. Where findings have been entered in a case disposed of by summary judgment, we take the trial court's findings as indications of the material facts as to which there are no genuine issues. *Id.*

personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1 [compensation for victims of violent crime]."

I.C. § 22–3–2–6 (emphasis added). The Indiana Supreme Court has found this statute to be "clear and unambiguous." *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 972.

Under I.C. § 22–3–2–13,

"Whenever an injury or death ... shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article."

I.C. § 22–3–2–13. Thus, the exclusivity provision does not bar a separate action against a third party where the circumstances of the injury or death give rise to such an action.

■ McQuade argues that Draw Tite, as the parent corporation of Mongo, was not McQuade's employer, and therefore is a third party under I.C. § 22–3–2–13. We disagree.

Indiana's appellate courts have not yet ruled upon the question of when a parent corporation may be considered a third party where a worker's compensation claim has been filed against a subsidiary. However, the Seventh Circuit considered this question under Indiana law in *Reboy v. Cozzi Iron & Metal, Inc.* (7th Cir.1993), 9 F.3d 1303, where Cozzi, the parent corporation, asked the district court to "pierce the corporate veil" and find that ASP, the subsidiary,

"was so highly integrated with the Cozzi corporation that they should be treated as one corporate entity for the purpose of applying the exclusivity provision of the Indiana Worker's Compensation Act. 'Piercing the corporate veil' requires that separate corporate identity be disregarded

where one corporation is so organized and controlled and its affairs are so conducted by another corporation that it is a mere instrumentality or adjunct of the other corporation."

*Id.* at 1308. The court held that ASP was not a "mere instrumentality" of Cozzi on the basis that

"[t]he record is replete with evidence that ASP and Cozzi are distinct and separately operated corporations and that Cozzi made significant and continuing efforts to maintain separate corporate entities. There is no basis in fact for treating Cozzi and ASP as one corporate entity."

*Id.* at 1308. The Seventh Circuit went on to suggest that the defensive use of the "piercing the corporate veil" doctrine "may simply be inappropriate under Indiana law." *Id.* at 1308 n. 9. However, the court's opinion does not preclude the possibility that where the evidence shows sufficient interconnectedness, this "reverse piercing" may be successful.

Under circumstances similar to the present case, the Michigan Court of Appeals found sufficient interconnectedness in *Verhaar v. Consumers Power Co.* (1989), 179 Mich.App. 506, 446 N.W.2d 299. In *Verhaar*, the court reversed the trial court's finding in favor of a plaintiff who fell from a crane owned by the parent company but maintained by the subsidiary, plaintiff's employer. In finding that the exclusive remedy provision of the Michigan Workers' Disability Compensation Act required the "reverse piercing" of the corporate veil, the court looked at several factors in analyzing the parent-subsidiary relationship, including the use of a combined workers' compensation policy, a combined bookkeeping and accounting system, a single personnel policy, control of the employee's duties, payment of wages, and performance of the employee's duties as an integral part of the employer's business toward the accomplishment of a common goal. *Id.* 446 N.W.2d at 300–01.

As a commentator has noted,

"the more evidence there is of genuine separateness in practice, as of operations, tax liabilities, loans, accounting, insurance,

hiring, and payroll, the stronger the case for denying the parent immunity.

\* \* \* \* \* \*

Generally, common ownership, identity of management, and the presence of a common insurer are not enough to create identity between parent and subsidiary for compensation purposes. Probably the most significant factor is actual control, and if the subsidiary is in practice not only completely owned but completely controlled by the parent, identity may well be found and immunity conferred. Conversely, a showing of absence of control is perhaps the most effective single way to disprove the unity of parent and subsidiary."

Arthur Larson, The Law of Workmen's Compensation, § 72.40 *Third Party Actions* 14–290.29–33 (1993).

Indiana cases have considered the exclusivity provision in several contexts. In cases involving an action against an employer's worker's compensation insurer (*Stump v. Commercial Union* (1992), Ind., 601 N.E.2d 327) and actions for intentional torts (*Baker, supra,* and *Foshee, supra* ), the relevant inquiry was on the circumstances and material aspects of the injury itself. In two cases involving actions against general contractors by employees of subcontractors (*Lackey v. DuHadway Co.* (1990), Ind.App., 560 N.E.2d 671, and *Wolf v. Kajima International, Inc.* (1993), Ind.App., 621 N.E.2d 1128.), the focus was on the fulfillment by the general contractor and the subcontractor of their relative duties with regard to providing worker's compensation insurance. In *Wolf,* the court held that an owner or general contractor does not become a "statutory employer," thus evading potential tort liability, merely by purchasing worker's compensation insurance on behalf of subcontractors. *Wolf,* 621 N.E.2d at 1132.

In the present case, it is undisputed that the injury occurred by accident arising out of McQuade's employment and in the course of McQuade's employment. Our focus, therefore, is on the relationship between McQuade and Draw Tite, and our task is to evaluate whether McQuade has satisfied her burden of demonstrating some grounds for taking the claim outside the Worker's Compensation Act—that is, whether Draw Tite is sufficiently independent from Mongo so as not to be considered McQuade's employer.

In the absence of Indiana authority, we herein adopt a synthesis of the approaches taken by the Seventh Circuit in *Reboy* and by the Michigan Court of Appeals in *Verhaar* as a standard by which to evaluate the relationship of Draw Tite and Mongo. Our general standard will be whether the parent and subsidiary companies are distinct and separately operated corporations which have made significant and continuing efforts to maintain separate corporate entities. Factors to be considered include the use of a combined workers' compensation policy, a combined bookkeeping and accounting system, a single personnel policy, control of the employee's duties, payment of wages, and performance of the employee's duties as an integral part of the employer's business toward the accomplishment of a common goal. We note that a determination under this standard is particularly and necessarily fact-sensitive as to the ultimate issue of whether two companies may be considered one for purposes of the limitation of remedies under the Act.

In its findings of facts, accepted as true by McQuade, the trial court stated the following:

"Based on the pleadings, the Affidavit of Jim Mellow, and page 13 of the Deposition of Larry Camp, the Court finds that Draw Tite has the right and ability to control all aspects of the operation of Mongo in Mongo, Indiana; Draw Tite and Mongo have interlocking Boards of Directors and Officers who directly oversee and control Mongo, and all Directors and Officers of Mongo are Directors and Officers of Draw Tite; Draw Tite and Mongo have a combined workers' compensation insurance policy which covers both parent and subsidiary; Federal Income Tax Returns prepared for Draw Tite include all earnings of Mongo, which are included in the total earnings of Draw Tite; Draw Tite and Mongo have very similar and very closely related personnel policies; all accounting and payroll for Mongo is performed by Draw Tite at Draw Tite's Michigan offices."

On the basis of these undisputed facts, we find that the interconnectedness of Draw Tite and Mongo is sufficient to confer immunity upon Draw Tite. Draw Tite supervises and controls Mongo, reports Mongo's earnings as profit, shares a worker's compensation policy with Mongo, and performs payroll and accounting functions for Mongo. These factors alone are sufficient to show that Draw Tite and Mongo are not "distinct and separately operated corporations" and that no "significant and continuing efforts to maintain separate corporate entities" have been made.

Accordingly, we find that McQuade's claim against Draw Tite is barred by the exclusivity provision of the Worker's Compensation Act. For the reasons set forth above, we therefore reverse the trial court's entry of summary judgment and remand this cause to the trial court with instructions to dismiss for lack of subject matter jurisdiction.

REVERSED and REMANDED.

ROBERTSON, J., concurs.

RUCKER, J., concurs in result.