637 N.E.2d 1282 (1994)
Anthony G. PERRY, Appellant (Plaintiff below),
v.
STITZER BUICK GMC, INC., et al., Appellees (Defendants below).
No. 41S01-9406-CV-567.
Supreme Court of Indiana.
June 23, 1994.
Rehearing Denied November 1, 1994.
*1284 John O. Moss, Indianapolis, for appellant.
Michael V. Gooch, Patricia Polis McCrory, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellees.
SHEPARD, Chief Justice.
Anthony Perry says that the managers of Stitzer Buick decided to drive him out of his job as a salesman because he was black. Stitzer Buick argues that it cannot be sued for having done so. We hold otherwise.

I. Perry's Experience at Stitzer
Treat customers "equally" and "politely." That was Gordon Heinriech's advice to Anthony Perry in August 1987 when he selected him to become one of Stitzer Buick's new trainees. Perry soon learned, however, that what was preached on Stitzer's showroom floor was not practiced by its managers. While eight of Stitzer's ten trainees quit before the end of the training period, Perry completed the program and soon was establishing himself as one of Stitzer's top salesmen. Nonetheless, Perry, an African-American, began to suspect that his white supervisors harbored animosity towards him. By November, Perry alleges, that animosity had escalated to little short of a racially motivated campaign to drive him from the dealership.
On November 11, Stitzer general manager Dick Loury made Perry and another black co-worker privy to his belief that "all you black people always" steal. Perry complained about Loury's slur to his immediate supervisor and to sales manager Tony Houk but to no avail. Houk just "laughed it off, he didn't care." Later that day and in front of Perry, leasing manager Carl Weidner described an African-American who owed him money as a "nigger." Doubt about Weidner's motivation for telling this story in Perry's presence was removed the following day when Weidner speculated at a sales meeting that Perry might leave the dealership since he had "called [Perry] a nigger" the day *1285 before. Perry again complained to his managers, but once again they ignored his complaints.
That Saturday, Perry had a confrontation with sales manager Houk. Perry needed Houk's approval in order to complete a sale. Houk routinely treated Perry with contempt during these encounters and often referred to him as "dummy" and "stupid." On this particular Saturday, Houk turned violent, apparently displeased with Perry's failure to make a sale to an elderly black couple. He called Perry a "black son of a bitch" and other vulgar names and then shoved him into his office where he further berated him and threatened him with discharge. Finally, Houk told Perry to "get [his] ass out there and try to sell another car." Perry wiped Houk's spit off his face and said "yes sir." He left the showroom in tears while his co-workers stood at the sales desk laughing and joking about the incident.
Perry's co-workers "bet" he would not return to Stitzer after that Saturday but Perry proved them wrong. Embarrassed and humiliated, he reported for work on Monday. When Houk arrived he glared at Perry and said, "Damn, he's still here." Amidst continuing harassment, Perry remained on the lot pitching Stitzer cars until the close of business. The following morning Perry was one of the first salesmen on the job. When Houk encountered Perry he again declared, "he's still here." Several minutes later Houk called Perry into his office and fired him. When Perry requested an explanation, Houk responded, "I no longer need your service." "[I]s it because I was late or I'm not producing ...?" Perry persisted. "No, we just no longer needed your services," Houk answered. Several days later Houk placed advertisements in an Indianapolis newspaper announcing Stitzer's need for sales people.
In response to his termination Perry brought suit against Stitzer Buick GMC, Inc., and its president David Stitzer; secretary-treasurer Byron Stitzer; sales manager Tony Houk; general manager Dick Loury; and leasing manager Carl Weidner, all in their official capacities (hereinafter "Stitzer").[1] Perry's complaint is in five counts and it alleges causes of action for assault, slander, and assault and battery. Stitzer answered by way of a general denial and pled various affirmative defenses. Perry also sued in U.S. District Court alleging causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 (1988) (amended 1991) and the Civil Rights Act of 1991, 42 U.S.C. § 1981, 1981(a)(1992). Perry's federal causes of action were remanded to state court where summary judgment was granted in favor of Stitzer on all claims against it.
On appeal, the Court of Appeals held that the trial court properly disposed of Perry's § 1981 claim and his request for retroactive application of the 1991 Civil Rights Act[2] but erred in disallowing his common law tort claims. Perry v. Stitzer Buick, GMC (1992), Ind. App., 604 N.E.2d 613. Both parties seek transfer, which we grant. We summarily affirm the Court of Appeals on Perry's civil rights claims, Ind. Appellate Rule 11(B)(3), and turn to his Indiana common law claims.

II. Standard of Review
In Evans v. Yankeetown Dock Corp. (1986), Ind., 491 N.E.2d 969, we held that recovery for personal injury or death by accident arising out of employment and in the course of employment can be sought exclusively under the Worker's Compensation Act and that such actions are cognizable only by the Worker's Compensation Board. The legislature intended the board's jurisdiction in such cases to be original and exclusive, and resort may not be had to the courts until the administrative process has been completely exhausted. Wilson v. Betz Corp. (1959), 130 Ind. App. 83, 91, 159 N.E.2d 402, 405 (citing Homan v. Belleville Lumber & Supply Co. (1937), 104 Ind. App. 96, 8 N.E.2d 127). Claims which do not meet any one of the jurisdictional prerequisites do not fall within the act and may be pursued in court. Evans, 491 N.E.2d at 973.
*1286 Relying on Evans and its progeny, Stitzer requested summary judgment on, inter alia, the ground that "there is no genuine issue of material fact that the Plaintiff's Complaint is barred by the exclusivity provision of the Indiana Workers Compensation Act." The trial court agreed, saying that "either the Indiana Workmen's Compensation Act is Plaintiff's exclusive remedy or the Defendants are not liable. In either case, summary judgment is [sic] favor of the defendant is appropriate."
This use of summary judgment is incorrect. The defense that Perry's claims are barred by the exclusivity provision of the act is an attack on the court's subject matter jurisdiction,[3] which cannot form the basis of a motion for summary judgment. See Mid-States Aircraft Engines, Inc. v. Mize Co. (1984), Ind. App., 467 N.E.2d 1242; accord Vink v. Hendrikus Johannes Schijf Rolkan N.V., 839 F.2d 676 (Fed. Cir.1988); Prakash v. American University, 727 F.2d 1174 (D.C. Cir.1984). Instead, when not pled in the answer, the appropriate vehicle for such a challenge is a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). This requirement flows from several important distinctions between the two motions.
Summary judgment terminates litigation predicated upon a finding that there are no material issues of fact that necessitate trial. In reviewing a motion for summary judgment, the judge may not weigh the evidence. Letson v. Lowmaster (1976), 168 Ind. App. 159, 341 N.E.2d 785. Instead, any doubts as to fact, or an inference to be drawn therefrom, are resolved in favor of the nonmoving party. Bischoff Realty v. Ledford (1990), Ind. App., 562 N.E.2d 1321. As a decision on the merits, summary judgment may not be rendered by a court which itself lacks subject matter jurisdiction. Cf. Suyemasa v. Myers (1981), Ind. App., 420 N.E.2d 1334 (trial court lacking jurisdiction is without power to rule on T.R. 12(B)(6) motion). Moreover, a summary judgment merges or bars the action for res judicata purposes. Mid-States Aircraft Engines, 467 N.E.2d at 1246-47.
By contrast, a motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. When a court lacks subject matter jurisdiction, any action it takes is void. In re Chapman (1984), Ind. App., 466 N.E.2d 777. A dismissal under Trial Rule 12(B)(1) is not an adjudication on the merits nor is it res judicata. Harp v. Dep't of Highways (1992), Ind. App., 585 N.E.2d 652. A plaintiff thus is free to refile the action in the same tribunal or another tribunal that has jurisdiction. See Mid-States Aircraft Engines, 467 N.E.2d at 1246-47. Lack of subject matter jurisdiction is an affirmative defense which may be raised in the pleadings, see T.R. 8(C), or on motion under 12(B)(1).
Whether the Worker's Compensation Board and not the trial court had jurisdiction is a question on which the opponent of jurisdiction would typically carry the burden of proof. See Methodist Hosp. v. Ray (1990), Ind. App., 551 N.E.2d 463. There is a strong public policy favoring the coverage of employees under the act. Thus, when the plaintiff's own complaint recites facts demonstrating the employment relationship and its role in the injuries alleged, the burden shifts to the plaintiff to demonstrate some grounds for taking the claim outside the Worker's Compensation Act. See Burgos v. City of New York, 98 A.D.2d 788, 470 N.Y.S.2d 18 (1983); Doney v. Tambouratgis, 23 Cal.3d 91, 151 Cal. Rptr. 347, 587 P.2d 1160 (1979); cf. 2A Arthur Larsen, Workmen's Compensation Law 12-12 (1993).
In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may resolve factual disputes. See State ex rel. Basham v. Medical Licensing Bd. (1983), Ind. App., 451 N.E.2d 691. The court has considerable latitude in devising procedures to ferret out the facts pertinent *1287 to jurisdiction, and it is well established that in doing so it may consider not only the complaint and motion but any affidavits or other evidence submitted. Id. Moreover, when considering a motion to dismiss for want of subject matter jurisdiction, a court may weigh the evidence to determine the existence of the requisite jurisdictional facts. Cooper v. County Bd. of Rev. (1971), 150 Ind. App. 232, 276 N.E.2d 533.
In sum, when Stitzer filed its motion for summary judgment and raised as a defense to Perry's tort action the applicability of the Worker's Compensation Act, the trial court should have treated it as a motion to dismiss for lack of subject matter jurisdiction. See Dep't of Revenue v. Mumma Bros. Drilling Co. (1977), 173 Ind. App. 487, 364 N.E.2d 167. Thereafter, Perry was required to show that the trial court possessed jurisdiction. See, e.g., Ogle v. St. John's Hickey Memorial Hosp. (1985), Ind. App., 473 N.E.2d 1055.

III. Jurisdiction Over Intentional Torts
In support of jurisdiction, Perry first argues that actions arising out of an employer's intentional torts are not barred by the act's exclusivity provision. As we noted above, when an employer challenges the court's subject matter jurisdiction, the burden is on the employee-plaintiff to establish that the cause is properly before the court. This requires that the plaintiff adduce evidence supporting jurisdiction and not merely rely on the pleadings. Cf. Tribbett v. Tay Mor Indus. (1984), Ind. App., 471 N.E.2d 332 (employee's "naked allegations" of intentional tort insufficient to withstand 12(B)(1) motion).
Even when supplemented by Perry's affidavit, we still believe the record fails to establish facts which would support Perry's intentional tort theory of jurisdiction. This subject is treated at some length in Baker v. Westinghouse Electric Corp., 637 N.E.2d 1271 (Ind. 1994), where we hold today that no intentional tort exception to the act exists. We held instead that to sustain a tort claim an employee must demonstrate that his injuries were not "by accident" as defined in the act. Reviewing the facts of this case under the standards announced in Baker, we conclude that Perry's injuries were "by accident."
Under Baker, an injury is "by accident" when it is intended neither by the victim-employee nor by the employer. Before an injury can be said to have been intended by an employer, two requirements must be met. First, the employer itself must have intended the injury. Inasmuch as the intentions of co-workers and third parties play no part in this consideration, many intentionally inflicted injuries must be deemed "by accident" under the act. See, e.g., Evans, 491 N.E.2d 969 (fatal shooting of employee by co-worker held "by accident"). Second, the employer-tortfeasor must act with the requisite level of intentionality. While there can be no doubt on this record that the offending Stitzer managers intended Perry's injuries to result, the evidence does not link this intent to the Stitzer corporate entity.
Tortious intent will be imputed to an employer that is a legal entity or artificial person where either (1) the corporation is the tortfeasor's alter ego or (2) the corporation has substituted its will for that of the individual who committed the tortious acts. Baker, 637 N.E.2d at 1275-1276. To prevail on the alter ego theory, the employee must show that both ownership and control of the corporation are in the tortfeasor's hands. Id. at 1275. Under the other prong of Baker, a corporation is chargeable with tortious intent when the individual who committed the tortious act was acting pursuant to a policy or decision made through the corporation's regular decision-making channels by those with authority to do so. Because the requisite level of intentionality must also exist, injury to the employee must be shown to have been the intended product of the policy or decision at issue if the proponent of jurisdiction is to prevail.
Employing the language of summary judgment, the Court of Appeals held that a genuine issue of material fact existed as to whether the defendants acted independently or "as the alter ego of Stitzer." Perry, 604 N.E.2d at 618. Our search of the record, however, has produced no evidence that any *1288 of the alleged tortfeasors acted as such. In Daniels v. Swofford, 55 N.C. App. 555, 286 S.E.2d 582 (1982), the plaintiff was a food service employee said to have been verbally abused and kicked by the president of the corporation. The court allowed the intentional tort claim to proceed against the president but not the corporate defendant, reasoning that there was no evidence to support an allegation that the president acted as the alter ego of the corporation. See also Jablonski v. Multack, 63 Ill. App.3d 908, 20 Ill. Dec. 715, 380 N.E.2d 924 (1978) (barring suit against corporation where restaurant manager not corporate alter ego); Wright v. Bryan Mfg. Co., 51 Fair Empl.Prac.Cas. (BNA) 803 (N.D.Ind. 1989) (barring suit against corporation where no evidence manager was alter ego or acting pursuant to orders) (applying Indiana law). Similarly, while Perry's affidavit does allege that Houk, Loury and Weidner possessed a high level of responsibility within the dealership, there is no evidence that any of them owned and controlled Stitzer Buick.
We also find no evidence for Perry's contention that Stitzer intended to discriminate against him and that Houk, Weidner and Loury acted pursuant to Stitzer's instructions. Perry admits as much in his complaint when he says that they were acting "for and pursuant to [their] individual and personal desires." The case of Bryan v. Utah International, 533 P.2d 892 (Utah 1975), is instructive on this point. There, the Utah Supreme Court dismissed a complaint against a corporate employer which alleged an intentional tort by one of its managers. The court noted that although the alleged misconduct had proceeded for some time and was known by various supervisors, no proof was offered that the injury was directed or intended by the corporation itself. Id. at 894-95. Here Perry offers no evidence which suggests that the torts here at issue were intended by the officers of Stitzer Buick, nor has our attention been drawn to any corporate policy or decision directing Stitzer's managers to behave as they did.
In sum, Perry has failed to establish that jurisdiction was in the trial court on grounds that his injuries were intentionally inflicted by Stitzer and not "by accident."

IV. Nature of the Injuries
Perry advances a more fundamental argument in support of his contention that his case may be adjudicated in the trial court. He argues that because his injuries engendered no work-related disability, the provisions of the Worker's Compensation Act do not apply. In particular, he contends that neither the embarrassment and humiliation nor the injury to character and reputation that he allegedly sustained constitute "personal injury or death" as those terms are comprehended by the act. We agree.
Although we have not had occasion to give formal definition to the term "personal injury," case law makes clear that its scope includes both physical injury and the somewhat different notions of "disability" and "impairment." E.g., Hansen v. Von Duprin, Inc. (1987), Ind., 507 N.E.2d 573;[4]Bethlehem Steel Corp. v. Cummings (1974), 160 Ind. App. 160, 162, 310 N.E.2d 565, 567. "Impairment" is a term of art for purposes of workers compensation that denotes an injured employee's loss of physical functions. Talas v. Correct Piping Co. (1982), Ind., 435 N.E.2d 22; Perez v. United States Steel Corp. (1977), 172 Ind. App. 242, 359 N.E.2d 925. "Disability" refers to an injured employee's inability to work. Talas, 435 N.E.2d at 26. The extent of a disability is determined by a worker's physical and mental fitness for various employment opportunities. Rork v. Szabo Foods (1982), Ind., 439 N.E.2d 1338.
In the instant case, Perry alleges he has been injured by various affronts and slanderous racial slurs. He asserts that he has suffered embarrassment, humiliation, stress and paranoia, and that his character and reputation have been damaged. Both parties concede, however, that he has not sustained any physical injury or loss of physical function. Likewise, the evidence indicates that, but for his termination, Perry was both able *1289 and willing to continue to perform his duties at Stitzer. In sum, the injuries at the heart of Perry's complaint were not physical, nor was there any impairment or disability as those terms are comprehended by the act. Accordingly, we hold that Perry's claims are not barred by the exclusive remedy clause of the Worker's Compensation Act because, alone, they present no injuries covered by the act.

V. Summary Judgment
Satisfied that Perry established jurisdiction in the trial court, we now turn to the question of Stitzer's tort liability and the proper portions of its motion for summary judgment. In awarding judgment to Stitzer, the trial court concluded that if the alleged tortfeasors' intent could not be imputed to Stitzer, then neither could Stitzer be liable on a theory of respondeat superior. At a minimum, Perry may have viable claims under the Employer's Liability Act, Ind. Code Ann. §§ 22-3-9-1 to -11 (West Supp. 1993). Summary judgment was thus inappropriate on the alternative grounds.

MANDATE
The trial court has subject matter jurisdiction over Perry's tort claims. We reverse the grant of summary judgment on the common law claims and remand.
DeBRULER, GIVAN and SULLIVAN, JJ., concur.
DICKSON, J., concurs with separate opinion in which DeBRULER, J., joins.
DICKSON, Justice, concurring.
The majority opinion reverses summary judgment and remands to the trial court for further proceedings on the possible common law claims of the plaintiff, Anthony G. Perry. In future proceedings, the trial court and the parties will confront the applicability of the common law fellow servant rule.
If wrongful conduct of Stitzer's employees had been directed at a customer or stranger, Stitzer would clearly be subject to respondeat superior liability. According to the fellow servant rule, however, such liability may be unavailable for Perry's claims against Stitzer for the same employee misconduct. I believe that it is unjustifiable for the law to deny Perry his remedy using the arbitrary distinction that he was an employee instead of a customer. To the extent that the fellow servant rule so declares, it is time to revise this ancient doctrine.
Employers are already insulated from full responsibility for personal injuries to their employees by the worker's compensation law and its prohibition of common law personal injury actions under the exclusive remedy clause. There remains little, if any, justification for giving continued vitality to the fellow servant rule, an instrument of the common law devised for employment relationships before worker's compensation statutes were developed by state legislatures.
The ultimate responsibility for recognizing and revising the common law of Indiana rests with this Court. "We cannot close our eyes to the legal and social needs of our society, and this Court should not hesitate to alter, amend, or abrogate the common law when society's needs so dictate." Brooks v. Robinson (1972), 259 Ind. 16, 23, 284 N.E.2d 794, 797. The common law "must keep pace with changes in our society," Troue v. Marker (1969), 253 Ind. 284, 290, 252 N.E.2d 800, 804, and it "is not a frozen mold of ancient ideas, but such law is active and dynamic and thus changes with the times and growth of society to meet its needs." Perkins v. State (1969), 252 Ind. 549, 554, 251 N.E.2d 30, 33. Based upon human experience, the common law represents the "unceasing effort of an enlightened people to ascertain what is right and just." Helms v. American Sec. Co. (1939), 216 Ind. 1, 6, 22 N.E.2d 822, 824.
While I agree with the majority that we are not at liberty to disregard the unambiguous statutory language of the Employer's Liability Act, I urge that in cases such as the present one where an employee is not protected by worker's compensation legislation and therefore entitled to pursue a tort claim against the employer in court, the outmoded fellow servant rule should not be applied to shield an employer from respondeat superior liability for harm inflicted by other employees in the scope and course of employment.
*1290 The majority apparently prefers to await presentation of this issue in a future case or possibly in the event of an appeal in this case following retrial. I would prefer that we address it at this time.
DeBRULER, J., concurs.
NOTES
[1] Perry also sued Houk, Weidner and Loury as individuals. Those actions are not a part of this appeal.
[2] The U.S. Supreme Court later confirmed this view. Rivers v. Roadway Express, Inc., ___ U.S. ___, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).
[3] Cf. State ex rel. Basham v. Medical Licensing Bd. (1983), Ind. App., 451 N.E.2d 691 (statute makes failure to exhaust administrative procedures a jurisdictional matter). According to Indiana's well-settled standard, subject matter jurisdiction is "the power to hear and determine cases of the general class to which the proceedings then before the court belong." Mishler v. County of Elkhart (1989), Ind., 544 N.E.2d 149, 151.
[4] See Carolyn W. Spengler, Hansen v. Von Duprin: Have the Floodgates Opened to Workmen's Compensation Claims?, 21 Ind. L.Rev. 453, 459 (1988).