Dennis TIPPMANN, Jr., Appellant–Defendant,

v.

Brian S. HENSLER, Appellee–Plaintiff.

No. 02A03–9412–CV–467.

Court of Appeals of Indiana.

Aug. 15, 1995.

a party to this appeal.

Robert T. Keen, Jr., Karl J. Veracco, Miller Carson Boxberger & Murphy, Fort Wayne, for appellant.

Joseph A. Christoff, Catherine S. Christoff, Christoff & Christoff, Fort Wayne, for appellee.

## OPINION

STATON, Judge.

Dennis Tippmann, Jr. ("Tippmann") appeals from the trial court's judgment to deny his motion for summary judgment against Brian S. Hensler ("Hensler"). In his appeal, Tippmann raises three issues for our review which we consolidate into one and restate as: whether the trial court erred in denying his motion for summary judgment.

We remand.

The facts most favorable to the judgment reveal that Tippmann and Hensler were employees of Tippmann Pneumatics, Inc. Hensler worked as an assembler and Tippmann worked for the service department. On October 19, 1990, Hensler, Tippmann, and other employees were in a paint booth during a scheduled afternoon work break. The paint booth was an area in which employees test fired paint guns. Several men including Hensler fired shots from paint guns toward the ceiling. Tippmann also loaded a paint gun and as Hensler exited the room, he fired and struck Hensler in the eye. Hensler sustained injuries and filed a claim for worker's compensation for which he recovered $19,-983.60.

Hensler then filed a complaint against Tippmann for compensatory and punitive

damages as a result of injuries he sustained from Tippmann's alleged negligence or intentional conduct. In his answer to Hensler's complaint, Tippmann alleged that Hensler's action was barred by the exclusivity provision of the Indiana Worker's Compensation Act ("the Act")[1]. Tippmann then filed a motion for summary judgment on this ground. The trial court denied his motion finding that genuine issues of material fact existed regarding: (1) whether Tippmann and Hensler were engaged in horseplay at the time of Hensler's injuries; (2) whether or not Tippmann was in the same employ as Hensler; and (3) whether Tippmann's actions were intentional. Tippmann appealed and this case was certified for interlocutory appeal pursuant to Ind.Appellate Rule 4(B)(6).

■ Our supreme court has determined that the use of a summary judgment motion is an inappropriate manner in which to claim that the exclusivity provision of the Act bars a plaintiff's complaint. *Perry v. Stitzer Buick GMC, Inc.* (1994), Ind., 637 N.E.2d 1282, 1286, *reh. denied.* This is because the defense that a claim is barred by the exclusivity provision of the Act is an attack on the court's subject matter jurisdiction, and therefore, cannot form the basis of a motion for summary judgment. *Northcutt v. Smith* (1994), Ind.App., 642 N.E.2d 254, 255 (citing *Perry, supra*). Hence, because the question of jurisdiction was squarely before the trial court here, we must analyze this case in that light. *Tapia v. Heavner* (1995), Ind.App., 648 N.E.2d 1202, 1205.

■ Unlike a ruling on a motion for summary judgment where the trial court may not weigh evidence, a motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. *Perry, supra*, at 1286. The court must determine whether the kind of claim the plaintiff advances falls within the general scope of authority conferred upon the court by the Constitution or by statute. *Behme v. Behme* (1988), Ind.App., 519 N.E.2d 578, 582, *reh. denied.* In so doing, the court may resolve factual disputes and has considerable latitude in devising proce-

dures to ferret out the facts pertinent to jurisdiction. *Perry, supra*, at 1286–1287. Thus, the court may consider not only the complaint and motion but any affidavits or other evidence admitted, and may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.* at 1287.

■ Tippmann contends that the exclusivity provision of the Act bars Hensler's claim. The exclusivity provision provides:

[t]he rights and remedies granted to an employee subject to I.C. 22–3–2 through I.C. 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under I.C. 5–2–6.1.

I.C. 22–3–2–6.

I.C. 22–3–2–13 of the Act further provides, in pertinent part, that:

[w]henever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in *some other person than the employer and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article.

(Emphasis added).

Thus, I.C. 22–3–2–13 is an exception to the general rule limiting an employee's recovery of job-related accidental injuries to provisions of the Act as it permits the injured employee to bring suit against individuals other than the employer or fellow employees. *Northcutt, supra*, at 256.

■ The language "not in the same employ" specifically preserves a co-employee's immunity from common law liability for acci-

---

1. Ind.Code 22–3–2–6.

dents found to have arisen out of and in the course of employment. *Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, 401–402, *reh. denied; Tarr v. Jablonski* (1991), Ind. App., 569 N.E.2d 378, 379, *trans. denied.*

■ The test to determine whether the injured employee and the co-employee are "in the same employ" at the time of the accident is whether or not the denominated defendant could obtain compensation benefits under the same or similar circumstances. *Tapia, supra,* at 1208; *Northcutt, supra,* at 256; *Weldy, supra,* at 403.

■ The record indicates that Hensler and Tippmann were both on a company scheduled afternoon work break at the time of the incident. This supports the conclusion that had Tippmann been injured under the same circumstances, he would have been able to obtain worker's compensation benefits to the same extent as Hensler. Accordingly, we conclude that Tippmann and Hensler were in the same employ at the time of Hensler's injury.[2]

■ We must next determine whether Hensler's injuries occurred: (1) "by accident" as required by I.C. 22–3–2–6 and (2) arose out of and in the course of employment as required by I.C. 22–3–2–2[3].

■ An injury is "by accident" when it is intended by neither the victim-employee nor by the employer. *Perry, supra,* at 1287; *Baker v. Westinghouse Elec. Corp.* (1994), Ind., 637 N.E.2d 1271, 1274. This follows the long standing rule in Indiana that an injury which stems from an intentional act of a co-worker is an injury "by accident". *Baker, supra,* at 1275, n. 6. Here, Hensler and Tippmann were co-employees at the time of

Hensler's injuries and the injury was not intended by Hensler or his employer. Thus, even if Tippmann's act was intentional, the incident is to be deemed "by accident" leaving Hensler eligible for worker's compensation benefits under I.C. 22–3–2–6.

■ An injury arising out of and in the course of employment refers to the time, place, and circumstances surrounding that injury. *Weldy, supra,* at 404. For an injury to arise out of and in the course of employment it must occur within the period of employment, at a place or area where the employee may reasonably be, and while the employee is engaged in an activity at least incidental to his employment. *Id.* An employee's activity will be considered incidental to his employment if the activity advances, directly or indirectly, his employer's interests. *Id.*

■ Accidents occurring in the performance of acts which are reasonably necessary to the life and comfort of a workman, although personal, are incidental to employment and compensable under the Act. *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 976, *reh. denied.* Moreover, this court has determined that work-related disputes and disagreements are consequences that arise out of and in the course of the employment relationship. *Nelson v. Denkins* (1992), Ind.App., 598 N.E.2d 558, 562.

■ Here, Hensler was on an afternoon break when he was injured, an act reasonably necessary to the life and comfort of a workman and therefore, incidental to his employment. *Evans, supra,* at 976; *Cf. Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, 1171 (injuries sustained when assaulted

---

2. We note that various panels of this court have carved out an exception to the exclusivity provision of the Act by determining that when an employee engages in horseplay or other various non-job activities causing injury to a co-worker, that employee forfeits the immunity provided by the Act. *See, e.g., Fields v. Cummins Emp. Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631; *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628, *trans. denied;* and *Martin v. Powell* (1985), Ind. App., 477 N.E.2d 943, *trans. dismissed.* We decline to follow these cases which expose a co-employee to liability for non-job related activities. Instead, we choose to follow the reasoning

set forth in *Weldy,* and we reject the trial court's application of this exception here. *See Tapia, supra* at 1208; and *Weldy, supra.*

3. The Act provides, in pertinent part, that every employer and every employee, except as stated in I.C. 22–3–2 through I.C. 22–3–6, shall comply with provisions of I.C. 22–3–2 through I.C. 22–3–6 respectively to pay and accept compensation for personal injury or death *arising out of and in the course of employment,* and shall be bound thereby.

by co-employee during coffee break were compensable under the Act). Thus, Hensler's injuries can be deemed to have arisen out of and in the course of his employment under I.C. 22–3–2–2.

However, this court has determined that certain acts of horseplay may not arise out of and occur in the course of employment. *Weldy, supra,* at 405. In instances where horseplay is a common occurrence and the employer, with knowledge of the facts, permits the practice to continue, he has acquiesced in the horseplay, and it becomes a condition of employment. *Id.* This satisfies the causal nexus between the injury and the performance of some service of the employment by demonstrating that the accident arose out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into it. *Id.* Yet, this nexus will be broken where it is found that the injured employee actively participated in the horseplay. *Id.* Active participation is effectively an intervening cause and this court has consistently denied compensation to an injured employee who so participates. *See id.*

Here, the trial court found that material issues of fact existed regarding whether Tippmann and Hensler were engaging in horseplay at the time of Hensler's injuries and whether Tippmann's actions were intentional. Thus, similar to *Weldy,* we conclude that the trial court must preliminarily determine whether Hensler was actively engaging in horseplay or whether Tippmann's act was intentional before it can ascertain whether it has subject matter jurisdiction to entertain Hensler's claim.[4] *Id.* at 406.

If Hensler was an innocent victim of Tippmann's intentional tort, his injuries arose out of and in the course of employment and the exclusivity provision of the Act applied leaving the trial court without jurisdiction to hear the case. If Hensler actively engaged in the horseplay, the injury was not in the course of his employment and the provisions of the Act will not apply.[5]

Because we do not have a factual determination before us on these issues, we remand this case to the trial court with instructions to make factual findings regarding whether Hensler actively engaged in horseplay at the time of his injuries. If so, jurisdiction is conferred. If not, the trial court is ordered to dismiss this case for lack of subject matter jurisdiction.

Remanded.

RUCKER, J., concurs.

GARRARD, J., dissents and files separate opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. Hensler elected to pursue a claim for worker's compensation and secured a recovery thereunder.

The majority correctly recognizes that Hensler could pursue a civil remedy against his co-employee if they were both engaged in horseplay at the time of the incident. The reason is that the injury would then be deemed not to have occurred within the employment and the Act would not apply. *Weldy,* 616 N.E.2d at 406.

Here Hensler has already successfully asserted that the Act does apply. He cannot have it both ways. His present action is barred by the prior successful prosecution of his claim for compensation. Accordingly, the

---

4. However, as indicated *supra,* by following the test set forth in *Tapia* and *Weldy* and determining that Hensler and Tippman were in the same employ at the time of Hensler's injuries, we conclude that no issue of fact exists as to this matter.

5. We reject Tippman's contention that by accepting compensation under the Act, Hensler's civil action was barred by the doctrine of the election of remedies. We note that the Act follows a strong public policy of prohibiting double recovery through an extensive subrogation scheme.

Nothing in the statute limits an injured employee to an election of remedies, but where an injured employee receives compensation from his or her employer or employer's compensation carrier, then the employer or the employer's compensation carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated by a third party. I.C. 22–3–2–13; *Wolf v. Kajima Intern, Inc.* (1993), Ind.App., 621 N.E.2d 1128, 1131, *adopted by* 629 N.E.2d 1237.

trial court should have dismissed his claim for lack of jurisdiction.