Dennis TIPPMANN, Jr., Appellant
(Defendant Below),

v.

Brian S. HENSLER, Appellee
(Plaintiff Below).

No. 02S03–9603–CV–201.

Supreme Court of Indiana.

Sept. 22, 1999.

Robert T. Keen, Jr., Karl J. Veracco, Fort Wayne, Indiana, Attorneys for Appellant.

Joseph A. Christoff, Catherine S. Christoff, Fort Wayne, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

This case comes to us on interlocutory appeal from the denial of Dennis Tippmann, Jr.'s, motion for summary judgment. The Court of Appeals remanded the case to the trial court for more fact finding on the trial court's subject matter jurisdiction. *Tippmann v. Hensler,* 654 N.E.2d 821, 826 (Ind.Ct.App.1995).

We grant transfer.

### Facts

Brian S. Hensler and Dennis Tippmann, Jr., were co-employees at Tippmann Pneumatics, Inc. Hensler worked as a paintball gun assembler, and Tippmann worked in the service department repairing paintball guns shipped to the company for repairs. On or about October 19, 1990, Hensler, Tippmann, and other employees were taking a scheduled afternoon break in a large room where paintball guns were serviced. According to Hensler,[1] Tippmann began "playing around" by aiming a gun that Tippmann had just serviced at Hensler and asking him, "Where do you want me to shoot you at?" (R. at 97.) Hensler responded by leaving the room, getting another paintball gun, and returning. The employees then sat together conversing, with Tippmann no longer pointing the gun at Hensler.

At the far end of the room in one corner was a paint booth in which employees test fired paintball guns and paint grenades. At that same end of the room, but in the opposite corner, was the door through which one would enter or exit the room. "[J]ust for fun," and not as part of their actual duties, (R. at 97), one of the employees fired a few shots down the length of the service room into the paint booth, and Hensler did likewise with the gun he now had. Tippmann angrily told the employees to stop firing their guns because, according to Tippmann, "it [was] kind of messy" and he "would probably have the clean it up." (R. at 49.) Hensler, however, stated that it was not part of Tippmann's job responsibilities to clean the paint booth, that in fact no one cleaned it. Regardless, Hensler responded to Tippmann's order by "dry firing" his gun (firing without ejecting a paintball) at the ceiling. Tippmann responded to Hensler's act of defiance by beginning to load his paintball gun, stating that he was going to shoot Hensler. Tippmann admitted that at this time he "may have wanted to hit Hensler while he was in the room." (R. at 95.) Hensler responded, "Forget this. I'm going to get out of here," (R. at 60),

---

1. The testimony cited throughout this opinion comes from the depositions of both Hensler and Tippmann, excerpts of which were part of the pleadings by way of their attachment as exhibits to Defendant's Motion for Summary Judgment, (R. at 39–69), and to Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment, (R. at 88–101).

and exited the service room. He did not state that he would be returning.

Tippmann testified that after Hensler left he decided to fire at the door through which Hensler had exited so as to make a loud sound against it and "scare" Hensler. (R. at 53–55.) Hensler, however, realizing after exiting that his break had not yet expired, re-entered the service room to continue his break "and talk to the guys." (R. at 61.) He stated that he was not in fear of being shot by Tippmann if he re-entered, believing that Tippmann had been "playing around" and was not really serious when he earlier threatened to shoot Hensler. (*Id.*) He therefore approached the door and proceeded to re-enter unannounced. Tippmann says that just as he fired his shot at the door, Hensler unexpectedly reentered the room through it. Tippmann's paintball struck Hensler in the left eye, causing severe and permanent damage.

Hensler filed a worker's compensation claim with Tippmann Pneumatics, and entered a settlement agreement with the company regarding the claim. He then filed a complaint in Allen Superior Court against Tippmann, alleging that Tippmann's negligence caused his injury, or alternatively that Tippmann intentionally caused his injury. Tippmann moved for summary judgment, claiming that the exclusivity provision of the Worker's Compensation Act, Ind.Code § 22–3–2–6, barred Hensler's action against him. The trial court denied Tippmann's motion, finding that material issues existed as to whether Tippmann intended to injure Hensler; whether the injuries were the result of horseplay and, if so, whether Hensler was an active participant or an innocent victim; and whether Tippmann was "in the same employ" when he injured Hensler. Tippmann then sought and received leave to file an interlocutory appeal.

The Court of Appeals remanded for a factual determination only on the issue of whether Hensler actively participated in horseplay, stating that if so, the trial court

could hear the case, but if not, the trial court should dismiss for lack of subject matter jurisdiction. *Tippmann*, 654 N.E.2d at 826. The court based its holding on prior Indiana cases that denied worker's compensation benefits to victims of horseplay injuries who themselves were actively engaged in the horseplay when the injury occurred. *Id.* at 826 (citing *Weldy v. Kline*, 616 N.E.2d 398 (Ind.Ct.App. 1993)). It rejected the trial court's rulings concerning the other two material issues. First, the Court of Appeals held that the litigants had been "in the same employ," because "had Tippmann been injured under the same or similar circumstances, he would have been able to obtain worker's compensation benefits to the same extent as Hensler." *Id.* at 825. Second, it declared that the trial court must consider the question of Tippmann's intent to harm Hensler when he fired the injurious volley. *Id.* at 826.

## I. Standard of Review

█ As the Court of Appeals correctly noted, "[T]he use of a summary judgment motion is an inappropriate manner in which to claim that the exclusivity provision of the [Worker's Compensation] Act bars a plaintiff's complaint." *Id.* at 824 (citing *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994)). This is because such a claim "is an attack on the court's subject matter jurisdiction, which cannot form the basis of a motion for summary judgment." *Perry*, 637 N.E.2d at 1286 (footnote omitted). "Accordingly, we proceed to analyze this case as a question of jurisdiction on which the plaintiff carries the burden of proof and would, typically, have been required to present evidence." *Foshee v. Shoney's Inc.*, 637 N.E.2d 1277, 1280–81 (Ind.1994).

## II. Suits Against Co–Employee Tortfeasors

The Worker's Compensation Act provides an exclusive remedy against an employer for accidental injuries that arise out of and in the course of the injured victim's

employment. Ind.Code Ann. §§ 22–3–2–6, 22–3–6–1(e) (West Supp.1997); *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969 (Ind.1986). The Act extends the immunity provided by the exclusivity provision to those "in the same employ" as the injured employee when the injury occurred.

Thus, a suit against a co-employee can proceed at trial under one of two circumstances. First, if the plaintiff can show that the Act does not apply to that particular litigation, then the trial court, and not the Worker's Compensation Board, has jurisdiction. The plaintiff accomplishes this by showing that the injury was not "by accident," that it did not "arise out of his employment," or that it did not "occur in the course of his employment." Ind. Code Ann. §§ 22–3–2–6, 22–3–6–1(e) (West Supp.1997); *Evans,* 491 N.E.2d at 973. Second, even if the Act applies, its exclusive remedy provision will not bar a common law suit against an employee who was not "in the same employ" as the plaintiff when the injury occurred. Ind.Code Ann. § 22–3–2–13 (West 1991); *Thiellen v. Graves,* 530 N.E.2d 765, 768 (Ind.Ct.App. 1988).

### III. Intentional Torts

The first jurisdictional question a trial court must answer is whether the injury at issue occurred "by accident." *See Evans,* 491 N.E.2d at 973. If the injury did not occur "by accident," then the Act does not apply and the trial court has jurisdiction. In *Evans,* we examined whether the phrase "by accident" focused on the unexpectedness and unusualness of the *event* causing the injury, or merely on the unexpectedness of the injury itself. We decided on the latter, concluding that injury "by accident" meant "accidental injury," not "injury caused by *an* accident." *Id.* at 974. Given this interpretation, we adopted the following test for determining when an accidental injury had occurred: whether the sufferer intended or expected that in-

jury would, on that particular occasion, result from what he was doing. *Id.*

In *Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271 (Ind.1994), we reaffirmed the *Evans* interpretation of "by accident" as meaning an unexpected injury, rather than an unexpected or unusual event. We noted, however, that *Evans'* victim-focused "by accident" test left out another important consideration for determining when an employee's injury, if caused by his employer, was accidental: the *employer's* intentions and expectations. *Id.* at 1273. Thus, we stated, "Because we believe an injury occurs 'by accident' only when it is intended by neither the employee nor the employer, the intentional torts of an employer are necessarily beyond the pale of the act." *Id.; see also Perry,* 637 N.E.2d at 1287; *Foshee,* 637 N.E.2d at 1281.

■ Viewing this language in *Baker* narrowly, Tippmann argues that his alleged intent to harm Hensler is of no moment, since only the employer's and injured employee's intentions matter when determining whether the injury was "by accident." (Appellant's Br. at 14–15, Appellant's Transfer Br. at 9–10.) The Court of Appeals agreed with Tippmann's interpretation of *Baker. Tippmann,* 654 N.E.2d at 825; *see also Landis v. Landis,* 664 N.E.2d 754, 756 (Ind.Ct.App.1996). Such an application of the test enunciated in our recent cases, while adhering to its letter, ignores its reasoning and misapprehends its purpose.

■ *Baker, Perry,* and *Foshee* were cases in which an employer was being sued by its employee—the "by accident" requirement in suits against co-employees was not at issue, *see, e.g., Perry,* 637 N.E.2d at 1285 n. 1; *Foshee,* 637 N.E.2d at 1280 n. 1, nor was it specifically addressed.[2] While the test stated in these

---

**2.** In footnote six of the *Baker* opinion we mentioned "the rule, long applied in Indiana, that an injury which stems from the intention-

al act of a co-worker is an injury 'by accident.' " *Baker,* 637 N.E.2d at 1275 n. 6 (quoting *Furst Kerber Cut Stone Co. v. Mayo,* 82

opinions mentions only the expectations of employer defendants and employee plaintiffs, the reasoning behind the test imparts itself equally to intentional torts inflicted by employees as to those inflicted by employers. We think that the same considerations which prevent an employer who has intentionally injured its employee from claiming that the injury was "by accident" also prevent a co-employee who has intentionally injured a fellow employee from asserting the injury was "by accident." Therefore, following the logical progression of reasoning from *Evans* to *Baker* to the case at hand, we hold that a party to a worker's compensation suit cannot claim that the injury at issue occurred "by accident," and thereby receive compensation[3] or immunity under the Act, when that party intended harm to arise from the acts which resulted in the injury. Therefore, the appropriate test for determining whether the injury was accidentally caused is the question, "Did the party who is advocating the applicability of the Act intend for harm to result from the actions that party undertook?" If so, then the injury did not occur "by accident" for that particular litigant.

Because this test focuses more on the intentions of the party alleging "accidental" injury than on the injury itself, one might notice that the same injury can be both "by accident" and not "by accident," depending on who is alleging the applicability of the Act. Such a circumstance, however, is not unusual. According to the North Carolina Court of Appeals, "[t]he mere fact ... that an injury is termed 'accidental' from the injured employee's viewpoint, requiring the employer to pay compensation under the Act, does not mean that the injury is accidental from the viewpoint of the intentional assailant." *Andrews v. Peters*, 55 N.C.App. 124, 284 S.E.2d 748, 750 (1981). For instance, an employee who is repeatedly stabbed by a fellow employee during an argument at work could file a claim for and receive worker's compensation on the premise that the injury she suffered was "by accident." In this instance, neither the employee nor the employer intended or expected the injury; therefore, to those parties it was unexpected and accidental.

When the same employee, however, then brings suit against the co-employee for the intentional tort, it is the co-employee tortfeasor, and not plaintiff who, in order to receive immunity, must allege that the stabbing injury he inflicted was "by accident," something he is unable to do. As Professor Larson states, "The legal reason for permitting the common-law suit for direct assault by the employer or coemployee ... is that the same person cannot commit an intentional assault and then allege it was accidental." 6 Arthur Larson, *Larson's Worker's Compensation Law*, § 68.21(b), at 13–123 (1997). He fur-

Ind.App. 363, 144 N.E. 857 (1924)). We further stated,

> When determining if an injury was "by accident," the dispositive inquiry is whether, as between the employer and sufferer, the injury was intended. As to this issue, intentions of co-workers, supervisors or other third parties are of no moment. Thus, if an employee is injured by the intentional tort of a co-worker and that tort was not also intended by the employer (or sufferer), and if the injury arose in and out of the course of the sufferer's employment, then it is compensable.

*Id.* When reading this footnote, one must do so within the context in which it is found. It is placed in the section of the opinion addressing the showing a plaintiff must make

when alleging her *employer* intentionally injured her, in a subsection entitled "Who Must Intend?". As is evident from the text preceding the footnote, it is placed there to head off any thought that the intentions of a co-worker could be imputed to the employer, if the employer did not also intend the harm resulting from the actions of that co-employee. This footnote, however, in no way addresses whether the co-employee tortfeasor's intentions are relevant when she, and not the employer, is defending a claim of intentional injury.

**3.** The Act prohibits compensation for injuries or death knowingly self-inflicted by an employee. Ind.Code Ann. § 22–3–2–8 (West 1991).

ther states, "There is nothing inconsistent in this result, curious as it may seem on the surface, since it is quite proper to analyze the incident in each type of action from the standpoint of the person having the burden of establishing his case or defense." *Id.* § 68.12 at 13–12.

**A. Previous Cases and the "By Accident" Requirement.** At first glance, Indiana precedent might seem to preclude review of a defendant employee's intentions as part of the "by accident" determination, as many prior cases have found such co-employee intentional torts to be "by accident" for purposes of coverage under the Act. For example, in *Evans* we found the shooting death of an employee at the hands of a fellow employee while at work to be "by accident." *Evans*, 491 N.E.2d at 975. Likewise, in *Foshee*, we found stabbing injuries inflicted by one employee upon another to be "by accident." *See Foshee*, 637 N.E.2d at 1281; *see also Baker*, 637 N.E.2d at 1275 n. 6. Many other Indiana cases have found likewise.[4] There is one important distinction, however, between these many cases and the case at bar. These cases involved either an injured employee's attempt to sue her employer for an injury intentionally caused her by a co-employee, *see, e.g.,*

*Foshee*, 637 N.E.2d 1277; *Evans*, 491 N.E.2d 969; *Gordon v. Chrysler Motor Corp.*, 585 N.E.2d 1362 (Ind.Ct.App.1992); *Fields v. Cummins Emp. Fed. Credit Union*, 540 N.E.2d 631 (Ind.Ct.App.1989); *Arrow Uniform Rental, Inc. v. Suter*, 545 N.E.2d 832 (Ind.Ct.App.1989); *Shelby v. Truck & Bus Group Div. of GMC*,[5] 533 N.E.2d 1296 (Ind.Ct.App.1989); or an employer's attempt to overturn an award of compensation to an employee who was intentionally injured by a co-employee, *see, e.g., Inland Steel Co. v. Flannery*, 88 Ind. App. 347, 163 N.E. 841 (1928); *Furst Kerber Cut Stone Co. v. Mayo*, 82 Ind.App. 363, 144 N.E. 857 (1924); *Payne v. Wall*, 76 Ind.App. 634, 132 N.E. 707 (1921); *Mueller v. Klingman*, 73 Ind.App. 136, 125 N.E. 464 (1919). None of these cases involved the applicability of the Worker's Compensation Act to an intentional tort action between fellow employees. This is an important distinction, because in all these cases the party alleging that the injury was "by accident" was not the party that had intentionally caused the harm. Thus, from the standpoint of the one alleging accidental injury in each case, the injury was not intended or expected, and was, to him or her, "accidental."[6]

4. *E.g., Gordon*, 585 N.E.2d 1362 (injuries caused by foreman's punch to employee's face held "by accident"); *Arrow Uniform Rental*, 545 N.E.2d 832 (injuries received through sexual assault of one employee by another held "by accident"); *Fields*, 540 N.E.2d 631 (injuries caused by sexual harassment of employee by her supervisor were "by accident"); *Shelby*, 533 N.E.2d 1296 (injuries caused by one employee's sticking a red-hot metal rod in groin of fellow employee held "by accident"); *Inland Steel Co.*, 88 Ind.App. 347, 163 N.E. 841 (injury totally disabling employee that resulted from altercation with fellow employee was "by accident"); *Furst Kerber Cut Stone Co.*, 82 Ind.App. 363, 144 N.E. 857 (death of employee, caused by his being struck in head with an iron bar by fellow employee, held "by accident"); *Payne*, 76 Ind.App. 634, 132 N.E. 707 (employee's debilitating injury, caused by being struck by lump of coal thrown in anger by fellow employee, were "by accident"); *Mueller*, 73 Ind.App. 136, 125 N.E. 464 (death of employee, caused by his being struck in the

head by a hammer thrown at him in anger by another employee, held "by accident").

5. Indeed, in *Shelby* the liability of the supervisor who committed the intentional tort was specifically mentioned as not part of the appeal. *Shelby*, 533 N.E.2d at 1298.

6. Our review of Indiana cases produces only one that clearly finds an intentional tort action against a fellow employee barred by the Worker's Compensation Act, and another that involves what might be construed as an intentional tort but is never discussed as such. The former is *Skinner v. Martin*, 455 N.E.2d 1168 (Ind.Ct.App.1983), in which an employee who was assaulted by his co-employee brought an action against that co-employee for the resulting injuries. The court found the action barred by the Worker's Compensation Act, but its analysis focused entirely upon the "arising out of and in the course of" requirements, implicitly finding the "by accident" requirement met by stating, "Such employ-

Thirty-four states currently exclude intentional tortfeasors from worker's compensation immunity. Larson, § 72.21 at 14–143 n. 23.01 (Supp. Nov. 1997). Twenty-two have statutory provisions explicitly excepting intentional torts, *id.* n. 23.1, and twelve except intentional torts through judicial decisions "based usually either on public policy or on the limitation of the act to accidental injury." *Id.* at 14–143, 14–145. Like Indiana, many of the states which exclude intentional torts from worker's compensation immunity under an accidental injury limitation or its equivalent do so in the face of older precedent finding one employee's intentional injuring of another to be "by accident" for purposes of compensation of the injury under the Act. The Supreme Court of Tennessee addressed this apparent inconsistency thirty years ago:

> We have authority for the proposition that an employee who is injured by a third person at a time when he is acting in the course of his employment suffers an "accident arising out of employment," which is compensable.
>
> All of these cases treat the injuring incident as an "accident" on the theory the incident was unexpected or unusual, or unintended from the standpoint of the employee....
>
> ....
>
> [W]hat we have to decide is whether or not the fiction, that the employee-victim of an intentional, deliberate assault has sustained an accident because it was un-

expected and unintended on his part, can be availed of by an assaulting coemployee to compel his victim to proceed under the Act. And we think the assaulter cannot so compel the victim, because the fiction was created and is allowed to operate solely because this is the fair, right and just thing to do. It is a conclusion based entirely on the effect on the assaulted employee. So that it would be a travesty on justice, indeed, to make this fiction operate in favor of one whose act has been wilful and malicious and intentionally harmful and is in no conceivable sense an "accident."

*Williams v. Smith,* 222 Tenn. 284, 435 S.W.2d 808, 809–11 (1968) (citations omitted). Professor Larson also approves distinguishing the older cases on this basis, as noted by the Michigan Supreme Court:

> [T]his Court has found deliberate assaults by coemployees or third persons to be compensable under the act. Apparently, the Court found the assaults to be accidents. As Professor Larson explained, "[T]he early difficulty presented by the argument that such an injury was the result of intention as distinguished from accident was overcome by the simple expedient of viewing the affair from the point of view of the victim rather than of the assailant, since from the victim's point of view the assault was an unexpected and untoward mishap." Professor Larson has suggested that in deciding whether an incident was an ac-

ment-related assaults are not uncommon, ... and the Act should be liberally construed to include them as compensable." *Id.* at 1170 (citing *Burkhart v. Wells Electronics Corp.,* 139 Ind.App. 658, 215 N.E.2d 879 (1966); *Inland Steel Co.,* 88 Ind.App. 347, 163 N.E. 841). The cases it cites for authority, however, involve suits between employers and employees for intentional torts committed by coworkers, and not suits against the intentional tortfeasors themselves for those injuries.

The other case is *Nelson v. Denkins,* 598 N.E.2d 558 (Ind.Ct.App.1992), in which a supervisory employee pushed another on the shoulder while telling him to "get back to work"; the next day the employee had pain in

his shoulder, back, neck, and head. *Id.* at 560. The Court of Appeals, citing *Evans,* considered only the *victim's expectations* when deciding the injury was "by accident." *Id.* The outcome would remain the same, however, even if the court had also reviewed the intentions of the tortfeasor in its "by accident" determination: nowhere does the opinion indicate that Nelson alleged an intent to harm on the part of Denkins, nor does a shove on the shoulder, accompanied by the command to "get back to work," generally carry with it an intent to cause injury. If anything, Denkins' actions were negligent, or possibly reckless, but not intentionally designed to harm Nelson.

cident, the incident should always be viewed from the perspective of the person seeking the protection of the act: When the employee seeks to recover benefits, the question is whether the injury was an accident from the employee's perspective; if the employer seeks to impose the accident requirement as a defense, the question is whether the injury was an accident from the employer's perspective. Once it is recognized that the accident requirement is examined from the perspective of the party seeking to benefit from the alleged accident, the apparent conflict [with the older precedent] is resolved.

*Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882, 888 (1986) (superceded by statute) (quoting 2A Larson, § 68.12, p. 13–7) (footnotes omitted).[7] Accord *Elliott v. Brown,* 569 P.2d 1323 (Alaska 1977); *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990); *Richardson v. County of Cook,* 250 Ill.App.3d 544, 190 Ill.Dec. 245, 621 N.E.2d 114 (1993); *Mazarredo v. Levine,* 274 A.D. 122, 80 N.Y.S.2d 237 (N.Y.App.Div.1948).

**B. Justifications for Excluding Intentional Tortfeasors from Immunity.** Besides finding support from many other jurisdictions and from Professor Larson, our extension of the *Baker* rule to encompass the intentions of a co-employee intentional tortfeasor when he is defending an intentional tort claim is supported by text, precedent, and policy.

First, as we said in *Evans,* "by accident" means "accidental injury." *Evans,* 491 N.E.2d at 974. The common understanding of an "accidental" injury is one in which neither the inflicting nor the injured party expected the injury to occur, as exemplified by the following definition of "ac-

cidental": "happening or ensuing *without design, intent, or obvious motivation* or through inattention or carelessness." *Webster's Third New International Dictionary* 11 (1993) (emphasis added). Words such as "design," "intent," "inattention," and "carelessness" contemplate the mens rea of the one causing the injury, and not just the one receiving it.[8] This understanding, that the phrase "by accident" encompassed both the plaintiff's and the defendant's expectations, motivated us in *Baker* to broaden the *Evans* test and hold that the Act's language excluded from immunity an employer who intentionally injured its employee. *See Baker,* 637 N.E.2d at 1273. In light of that understanding of the Act's express language, to hold now that this same language does *not* exclude a *co-employee's* intentional torts from immunity would create an exception to the Act incompatible with its express language. Also, given *Baker,* such a holding would be "anomalous," *Golec v. Metal Exchange Co.,* 453 Mich. 149, 551 N.W.2d 132, 150 (1996), and "unreasonable," *Newby v. Gerry,* 38 Wash.App. 812, 690 P.2d 603, 607 (1984). "If the employer cannot use the worker's compensation act as a shield to protect itself from intentional misconduct, then neither should the act shield a coemployee from liability for intentional misconduct." *Whaley v. McClain,* 158 Mich.App. 533, 405 N.W.2d 187, 189 (1987).

Second, to hold that the Act provides immunity for employees who intentionally injure their co-workers would insulate those employees from the deterrence that arises from exposure to regular civil damages. *Cf. Baker,* 637 N.E.2d at 1274 (explaining the deterrence effects of allowing regular civil damages against employers who commit intentional torts). As the

---

7. While this case was an action against an employer for an intentional tort caused by a co-employee, its reasoning extends equally to actions brought against the intentional tortfeasor. *See Golec v. Metal Exchange Corp.,* 453 Mich. 149, 551 N.W.2d 132, 149–50 (1996).

8. As Oliver Wendell Holmes pointedly stated, "[E]ven a dog *distinguishes* between being stumbled over and being kicked." O. Holmes, (1881), *The Common Law* 3 (1881).

Michigan Supreme Court noted, "Intentional misconduct would seem to be the type of behavior the Legislature would most want to deter and punish. Including intentional torts within the exclusivity provision would in that sense be counterproductive." *Beauchamp*, 398 N.W.2d at 889. In discussing this deterrence rationale, the Utah Supreme Court stated, "It would serve no social purpose to allow an employee to intentionally injure another employee engaged in the same employment, then use an otherwise socially beneficial, remedial, statute as a shield for such wrongdoing." *Bryan v. Utah Int'l*, 533 P.2d 892, 894 (Utah 1975). *See also Newby*, 690 P.2d at 607–08 ("forbidding suit would allow an employee to bludgeon a co-worker with civil impunity, and ... remove the deterrent effect of civil liability and damages").

■ Third, while immunity from liability for accidental workplace injuries is part of what employees received in the *quid quo pro* exchange underlying the worker's compensation system, Indiana public policy would not allow the exchange to include immunity from *intentional* torts, because "Indiana generally · denies the ability to insure against or waive liability for intentional torts." *Baker*, 637 N.E.2d at 1274 (citing *LaFrenz v. Lake County Fair Bd.*, 172 Ind.App. 389, 360 N.E.2d 605 (1977)). As we noted in *Stump v. Commercial Union*, 601 N.E.2d 327 (Ind.1992), "The longstanding rule of this jurisdiction is that the Worker's Compensation Act should be liberally construed to effectuate the humane purposes of the Act...." *Id.* at 331–32 (citing *Talas v. Correct Piping Co., Inc.*, 435 N.E.2d 22, 28 (Ind.1982)). We do not believe those "humane purposes" include shielding from civil liability an employee who intentionally injures his fellow employee.

Finally, we see little danger that allowing an employee to sue a co-employee for an intentional tort might lead to double recovery. *See, e.g., Fregeau v. Gillespie*, 96 Ill.2d 479, 71 Ill.Dec. 716, 451 N.E.2d 870, 872 (1983). Such a fear, however, is unfounded because the employer or its worker's compensation insurance carrier would have subrogation rights to the award under Ind.Code § 22–3–2–13. Such subrogation would thereby repay the insurance carrier or company for the cost of the intentional wrong. In this way subrogation also prevents the intentional tortfeasor from shifting the cost of his wrongdoing onto the industry and the consumer.[9] *Meerbrey*, 151 Ill.Dec. 560, 564 N.E.2d at 1229. As the Alaska Supreme Court stated,

> Workmen's compensation benefits are paid from employer[s'] premiums, as a means of spreading the cost of hazards of the workplace. We do not believe it would be wise public policy to allow an intentional tortfeasor to shift his liability for his acts to such a fund. Assaults by fellow workers differ not in degree but in kind from the type of harm the statute was enacted to deal with [sic].

*Elliott v. Brown*, 569 P.2d 1323, 1327 (Alaska 1977). The Washington Court of Appeals summed up nicely the subrogation justification for not shielding co-employee intentional tortfeasors from liability:

> The employer and worker's compensation fund will benefit because it has a lien on any recovery from the tortfeasor for benefits paid.... The employee will benefit by possessing a right to recover for the full measure of his injuries.... The public will benefit by a fairer allocation of compensation for injuries, and the deterrence of workplace intentional torts. The consumers will benefit because the costs of the wrongdoer's actions are not passed on as higher prices for goods and services. Only the intentional tortfeasor stands to lose if a suit

---

9. "The act envisions that the costs of no-fault liability will be borne by industry, ... and passed on to the ultimate consumer of prod-

ucts." *Baker*, 637 N.E.2d at 1274 (citations omitted).

proceeds. He is not deserving of protection.

*Newby,* 690 P.2d at 608 (citations omitted).

■ **C. Showing Intent.** In *Baker* we decided that a plaintiff must demonstrate a high degree of "intent to harm" on the part of an employer before an injury caused by that employer will be found intentional. We based our decision on the observation of the Court of Appeals in *National Can Corp. v. Jovanovich,* 503 N.E.2d 1224 (Ind.Ct.App.1987), that a lower standard risked " 'the workmen's compensation scheme being "swallowed up" by a glut of common law suits outside the Act.' " *Baker,* 637 N.E.2d at 1275 (quoting *National Can,* 503 N.E.2d at 1233 n. 14.) Our concern over a proliferation in litigation also informs our view of intentional tort actions against co-employees. *Fregeau,* 71 Ill.Dec. 716, 451 N.E.2d at 872. Therefore, "[n]othing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Baker,* 637 N.E.2d at 1275.[10] We note, however, that the defendant need not have intended the particular injury which resulted. As long as he intended an appreciable degree of harm to arise from his actions, it does not matter that more or less harm resulted, compared to that which he originally intended. *See* Restatement (Second) of Torts § 8A cmt. b (1965).

■ **D. Application of "By Accident" Standard.** The trial court determined that a factual dispute existed as to "whether Tippmann intentionally acted to harm Hensler" when he fired the shot that struck Hensler in the eye. (R. at 128.) This determination was the product of its review of the evidence under a motion for summary judgment, upon which a court cannot weigh evidence, and must resolve all inferences in favor of the non-moving party. *Perry,* 637 N.E.2d at 1286. When making a jurisdictional determination,

however, a trial court has "considerable latitude in devising procedures to ferret out the facts pertinent to jurisdiction," and "may weigh evidence to determine the existence of the requisite jurisdictional facts." *Id.* at 1286–87.

Our review of the record satisfies us that the evidence provided an adequate showing of "deliberate intent to inflict an injury," *Baker,* 637 N.E.2d at 1275, and that granting a motion to dismiss would have been error. Tippmann grabbed a gun, announced "Where do you want me to shoot you at?", and fired multiple times in Hensler's direction. This suffices.

### Conclusion

We reverse the trial court and remand for proceedings on the merits of Hensler's lawsuit.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.

---

**10.** In so holding we expressly decline to adopt the rule employed in North Carolina which holds that "constructive intent," based upon a showing of "wanton or reckless negligence,"

will "provide[ ] the mental state necessary [to establish] an intentional tort." *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E.2d 244, 248–249 (1985).